**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Allen NMN KELLY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 29, 2010.
Filed Sept. 9, 2010.

---

Lori A. Yost, York, for appellant.

Hugh S. Rebert, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: BOWES, J., McEWEN, P.J.E., and CLELAND *, J.

OPINION BY CLELAND, J.:

Appellant, Allen Kelly (Kelly), appeals the judgment of sentence of the Court of Common Pleas of York County entered on December 11, 2008 after Kelly pleaded guilty to driving under the influence—highest rate of alcohol, 75 Pa.C.S.A. § 3802(c). Kelly argues the guilty plea was not knowingly, voluntarily, and intentionally tendered. Specifically, Kelly argues he was forced into accepting a guilty plea because the trial court erred in granting counsel's motion to withdraw on the eve of his trial. Because Kelly intentionally forfeited his right to counsel, we conclude his guilty plea was knowingly, voluntarily, and intentionally tendered. Accordingly, we affirm the judgment of sentence.

The relevant procedural history of the case is as follows: On June 19, 2008 Kelly pleaded guilty to count 2 of the criminal information, driving under the influence—highest rate of alcohol, third offense, 75 Pa.C.S.A. § 3802(c). At the hearing, presided by the Honorable John H. Chronister, Kelly was represented by Anthony Tambourino, Esq. (Attorney Tambourino) of the York County Public Defender's Office. After it accepted Kelly's plea, the court agreed to defer sentencing for 90 days. N.T., 6/19/08, at 5. Specifically, the court noted that pursuant to the plea agreement:

> Kelly will receive a sentence of one to five years and a $2,500 fine, plus all the

* Retired Senior Judge assigned to the Superior Court.

standard DUI requirements. [Kelly] wants to serve it in the York County Jail, and the [c]ourt is granting permission to do so if he can obtain a job which would qualify.

We will schedule sentencing for September 22, 2008, at 9:00 a.m. before Judge Blackwell. At that time, if [Kelly] does not have a job, then the sentence that will be imposed would be one to five years in the state [correctional institution] with credit back to today. But, we hereby revoke his bail today so he can start getting credit on this count.

We further direct that if he can obtain employment which meets Outmate qualifications any time between now and then, and if counsel contacts the [c]ourt, a sentencing date will be scheduled so that he can go to work as soon as a job is available.

We note that we will make him eligible for Outmate if he does find a job which qualifies him.

*Id.* at 7–8.

On July 16, 2008 Kelly filed *pro se* a motion to "be placed in the work release housing unit and to be allowed to leave the prison Monday thru Friday from the hours of 7am till 2pm for the purposes of gaining employment." Motion for a Court Order, 7/16/08, at 1.

On July 23, 2008 the Honorable Penny L. Blackwell denied the motion because Kelly was "represented by counsel and [was] awaiting sentencing on September 22, 2008, at 9:00 AM." Order, 7/23/08, at 1.

On August 15, 2008, Kelly filed *pro se* a motion to withdraw his guilty plea. In his motion, Kelly argued his plea counsel (Attorney Tambourino) had been ineffective because "he failed to recognize and/or deliberate disregard the fully defective Affidavit of Probable Cause, which is a matter of 'Constitutional provisions.'" Motion to Withdraw Guilty Plea, 8/15/08, at 1 (citations omitted). Kelly concluded as a result of plea counsel's ineffectiveness his guilty plea was not valid. *Id.* The court scheduled a hearing on Kelly's motion for September 22, 2008. Order, 8/20/08, at 1.

On September 22, 2008, at the hearing on Kelly's motion to withdraw his guilty plea, Kelly represented himself, while Ronald W. Jackson, Esq. (Attorney Jackson) of the York County Public Defender's Office, assisted Kelly as standby counsel.[1] Judge Blackwell presided over the hearing. After the court warned Kelly of the consequences resulting from withdrawing the guilty plea, the court invited Kelly to discuss the matter with standby counsel. At the conclusion, the following exchange took place:

[Attorney Jackson]: [Kelly] would like to withdraw his plea in this matter. I have advised him that it will be a trial, there will be no further offers by the Commonwealth in this case.

And he is also asking for a court-appointed attorney because our office— he's alleging ineffectiveness against our office in that we won't let him or we won't file any motions on his behalf challenging the affidavit, which is his issue. [2] And he is—

---

1. We note there is no indication in the record how and when Attorney Tambourino had been permitted to withdraw from representing Kelly.

2. Kelly argued the affidavit of probable cause in support of the Commonwealth's request for his arrest was not valid because the affiant did not sign it. The Commonwealth argued the copy filed with the Magisterial District Court had been signed by the affiant. Attorney Jackson said the copy of the affiant included in the discovery packet was not signed but that a copy of the signed affidavit had been subsequently provided to Kelly. While Kelly acknowledged he received the signed copy of the affidavit he also argued the affida-

[Kelly]: One of the issues.

Attorney Jackson: Apparently one of the issues.

N.T., 9/22/08, at 4.

The trial court denied Kelly's oral motion for appointment of another court-appointed counsel and ordered Kelly to proceed with Attorney Jackson as standby counsel. *Id.* at 5. The court then granted Kelly's motion to withdraw his guilty plea. *Id.*

In preparation for trial, the parties next discussed other issues, including whether the parties would stipulate Kelly's blood alcohol content level. *Id.* at 6–7. Kelly refused to do so. *Id.* at 7.

Next, at the same hearing, the parties discussed bail for this case and two other active parole cases (4569 CR 2003 and 5254 CR 2003). *Id.* at 7–9. The trial court set bail on this case on $5,000.00 secured. *Id.* at 8. The Commonwealth then sought to have a parole violation detainer to be lodged against Kelly on the other two cases. *Id.* at 8–9. After the court learned the Commonwealth had filed the petition for a detainer before Kelly's maximum release date, the court granted the Commonwealth's request. *Id.* at 9. Then the following exchange took place:

[Kelly]: I thought you were defending me.

Attorney Jackson: You're representing yourself.

[Kelly]: You didn't defend this.

[Judge Blackwell]: Sir, the petition was appropriately filed.

[Kelly]: You didn't defend that. You're supposed to be my public defender.

Attorney Jackson: I'm not your public defender.

[Kelly]: Please. You're right. Pretender.

*Id.* at 9.

On September 23, 2008, Kelly filed *pro se* an omnibus pretrial motion alleging that the original affidavit of probable cause accompanying the arrest warrant had not been signed by affiant, the affidavit of probable cause could not be amended by subsequently filing a signed affidavit, the copy of the affidavit of probable cause given him (which was unsigned) was the exact copy of the original affidavit of probable cause used for purposes of the arrest warrant and that, consequently, his arrest was illegal because it was based on an invalid arrest warrant. Omnibus Pretrial Motion for Relief, 9/23/08 at 1–2.[3]

On November 3, 2008, the date scheduled for Kelly's trial, Kelly was acting *pro se*, assisted by Attorney Jackson as standby counsel, before Judge Blackwell. After the Commonwealth indicated it was ready to proceed, Attorney Jackson represented to the court Kelly wanted other counsel because there was an irreconcilable breakdown in communications and that Attorney Jackson could not fully represent Kelly. Kelly added: "I feel that they refuse to argue my defense or my claims that I raised … so that's ineffective counsel." N.T. 11/3/08 at 3. Next, the following exchange took place:

[Judge Blackwell]: And I've heard what Attorney Jackson has indicated in the [c]ourt. At this point, based upon what Attorney Jackson has indicated, I will be

vit had been signed only "after the fact that [he] put a motion in." N.T., 9/22/08, at 4. Judge Blackwell, after hearing argument from both counsel and Kelly, concluded the issue was frivolous. *Id.* at 3.

3. It appears Judge Blackwell denied this motion. *See* N.T. 12/11/08, at 2. Other than a reference made by the Commonwealth at the time of trial/guilty plea on December 11, 2008 the record, again, is silent about the disposition of said motion.

assigning—do you want a stand by or do you want full counsel?

[Kelly]: Full counsel.

[Judge Blackwell]: That I am checking to see, who would be available. I will appoint you counsel and you are assigned that counsel; do you understand that?

[Kelly]: Yes, ma' am.

[Judge Blackwell]: So at this point, this matter will be continued so as to have new counsel, who will be appointed by the [c]ourt to ... meet with [Kelly] [and] discuss [with him] various matters.

. . . .

[Attorney Jackson]: Are you going to keep it on the November trial term?

[Judge Blackwell]: No, because counsel cannot get ready in time. Because if [Kelly] has a motion out there, they have to discuss it with his client or her client. Attorney Jackson, I'll be setting it for the November 18th or 20th pretrial.

*Id.* at 4–5.

The same day (November 3, 2008), the court appointed Attorney Scott A. McCabe (Attorney McCabe) to assist Kelly in the proceedings.[4] On December 4, 2008 Attorney McCabe filed a petition to withdraw as counsel. In his petition, Attorney McCabe stated:

. . . .

5. Since November 3, 2008, the undersigned counsel has reviewed all of the discovery materials, met with Attorney Jackson and Assistant District Attorney [Karen] Comery [ (Attorney Comery) ], and has met with [Kelly] at the York County Prison to prepare for trial.

6. However, there has been a complete breakdown in the attorney-client relationship. [Kelly] has, among other things, accused this counsel of lying to him, sent him letters alleging his ineffectiveness, asserts that the undersigned counsel is actually working for the Commonwealth in this prosecution, and utterly fails to effectively communicate with this counsel. [Kelly] refuses to discuss trial strategy with the undersigned counsel, stating he cannot trust his court-appointed counsel as I work for a corrupt county judicial system. [Kelly]'s unreasonable conduct renders it unreasonably difficult, if not impossible, for this counsel to carry out his duties effectively.

Petition to Withdraw as Counsel, 12/04/08, at 2.

The trial court set a hearing on counsel's motion to withdraw for December 9, 2008.[5] At the hearing, after Attorney McCabe reiterated in court the content of his petition to withdraw, the following exchange took place:

[Kelly]: Your Honor, Attorney McCabe has already showed he was ineffective. On November 3rd when you appointed Attorney McCabe to me, he came down to the holding cell and told me he was going to see me before the 18th, which was when my trial was supposed to be scheduled. That day came. He never showed up to see me.

Finally, after that—he finally met me on December 3rd. I expressed my concern to him. He told me my arguments were F-ing bullshit. That's exactly what he told me. He also told me the argument I had was frivolous. That's basically

4. The date of appointment is stated in Attorney McCabe's petition to withdraw; however, there is no formal entry in the record of Attorney McCabe's appointment.

5. Once again, it appears the notice of the court order setting a hearing on Attorney McCabe's petition must have been given to the parties informally because the actual order is not in the record.

saying the same thing the Public Defender is doing. That's ineffective to me.

[Judge Blackwell]: Sir, I have indicated there has already been raised your concern about your contention [*i.e.,* validity of affidavit of probable cause]. This [c]ourt has indicated already that your contention has no merit.

[Kelly]: Then he suggested that—I asked him what his suggestion would be. His suggestion was that I would take the one to five. If you are supposed to be my defense attorney, the suggestion shouldn't be take the one to five and be done with it. There should be some strategy for him to defend me.

[Judge Blackwell]: If I understand—was there an offer made by the Commonwealth?

[Attorney Comery]: There was. We have been through this before with [Kelly]. It is, obviously, apparent he didn't want to listen to what the attorney says. Since he knows it all, maybe he should just proceed pro se and go to trial.

[Kelly]: I dispute that. They provide law libraries at the prison. I researched a lot of stuff there. I can quote a law. I have asked Attorney McCabe some of it. He hasn't proved to me about some of the arguments that it is frivolous.

. . . .

[Attorney McCabe]: Every issue that's raised to me. I have addressed in a letter that was sent to him last week with all my legal research, including that every issue that he has raised to me is without merit. So, I have done the legal research for him. I have shown it to him. He does not accept it.

[Judge Blackwell]: [Y]ou have been through several attorneys. Now I am out of court-appointed counsel. You are at a point where—Attorney McCabe appears to be saying there is no attor-

ney/client relationship. You are now at that point where you do not want to cooperate with counsel and you are left with representing yourself, which is fine. I mean, that's absolutely your right to do. But—

[Kelly]: Then there is the issue—

[Judge Blackwell]: Go ahead.

[Kelly]: Then there is the issue of the detainer that I told him from my research, legal research from Westlaw, Probation and Parole, the detainer was placed on me illegally because my original term of probation expired.

[Attorney McCabe]: I have also done the research on that, Your Honor. I have come to a contrary conclusion. I provided him with the law on that. He does not accept that.

. . . .

[Kelly]: He didn't show me no [sic] case law on that one, Your Honor.

[Judge Blackwell]: Well, but you are at this point where either you work with Attorney McCabe or you are representing yourself. I have run out of options for counsel for you.

[Kelly]: Well, Your Honor, if he is not going to defend me properly—and this is my freedom we are talking about, not his. He is not concerned with my—if he is not concerned with my freedom—it doesn't serve my best interest represent myself. I am not refusing counsel, though, so—

[Judge Blackwell]: But, sir, there comes a point where the [c]ourt is at an end. You have been through the attorneys. So, you are on your own.

[Kelly]: The Sixth Amendment says I am entitled to representation.

[Judge Blackwell]: You are entitled to counsel provided that you cooperate with counsel.

[Kelly]: Not cooperate and accept a sentence, Your Honor.

[Judge Blackwell]: That was a plea offer. It wasn't a sentence. It was a plea offer. You either—you have the right, as does anybody who is made an offer from the Commonwealth—to accept or reject. You reject it, it is a trial. And from what you have said, you have rejected it. So, now it is trial.

. . . .

And you have the right to an attorney so long as you are cooperative, which today you have failed to be.

[Kelly]: Maybe I should restate that I have the right to effective counsel.

[Judge Blackwell]: Sir, at this point, the [c]ourt will grant Attorney McCabe's motion. He is now withdrawn as your counsel, and you are now pro se and will stay on the trial list.

Attorney McCabe, make sure he gets all the paperwork. He is on his own.

N.T., 9/12/08, at 3–7.

On December 11, 2008, Kelly appeared before Judge Chronister for his trial. While Judge Chronister openly disagreed with Judge Blackwell's decision not to appoint Kelly other counsel, he nonetheless felt he was bound by that decision and could not reverse it. Accordingly, Judge Chronister would not consider appointing Kelly other counsel or continuing the case.[6] However, Judge Chronister painstakingly and patiently reviewed with Kelly all the ins and outs and pros and cons of Kelly's options at that procedural junction. The review of the terms, conditions and consequences of the plea agreement as compared to the consequences of facing a

trial spans over 30 pages of the notes of testimony.

After carefully weighing his options, Kelly eventually accepted the plea agreement. Pursuant to the agreement, Kelly pleaded guilty to driving under the influence—highest rate of alcohol, 75 Pa.C.S.A. § 3802(c), whereas the remaining counts were *nolle prossed.* Judge Chronister, however, before accepting the plea, asked Kelly whether he wanted to check with Attorney McCabe regarding the plea. At that point, the following exchange took place:

[Judge Chronister]: Maybe we should wait until 1:30 and get Attorney McCabe here for purposes of acting as standby [c]ounsel. Do you have an opinion in regard to that?

[Kelly]: What good is that going to do me now?

[Judge Chronister]: Well, we could give you a chance to talk to him if you wanted to and discuss all the things that we talked about this morning in further detail, if you had any further questions. You don't have to. You can say, "At this point I don't have any more questions, and everything that he could have possibly told me, the Judge told me."

[Kelly]: Like I said, our relation wasn't good, because he refused to argue anything I wanted him to argue anyway, so it would be meaningless to me, really.

[Judge Chronister]: So at this point you're willing to waive his presence here today, but you're not willing to waive the objection to the fact that you didn't have [c]ounsel who was willing to properly represent you? You still want to fight that issue, but you don't want [Attorney]

---

**6.** Judge Blackwell's order of December 9, 2009, in relevant part, reads as follows: "No continuances will be granted on this withdrawal [*i.e.*, Attorney McCabe's withdrawal] nor for the retention of new counsel." Order,

12/9/08, at 1. Because of our disposition of the case, we do not need to address the applicability of the coordinate jurisdiction rule here.

McCabe here because he didn't want anything more to do with you and asked to be out?

[Kelly]: Correct.

*Id.* at 32.

After Judge Chronister accepted the plea, he sentenced Kelly, *inter alia*, to "1 year in the York County Jail, followed by the balance of 5 years on supervision, fine in the amount of $2,500, cost of [p]rosecution, $10 fine under Act 45." *Id.* at 34.

Subsequently, Kelly made an oral motion to withdraw his plea "on the basis that Judge Blackwell's Order depriving him of [c]ounsel was improper." *Id.* at 38. Judge Chronister denied the motion because he "was bound by Judge Blackwell's Order." *Id.* Later, Judge Chronister appointed new counsel, Lori A. Yost, Esq. (Attorney Yost), to assist Kelly in the post-sentence/appeal proceedings. Order, 12/18/08 at 1.

On December 22, 2008, Attorney Yost filed a motion for reconsideration. A hearing on this motion was scheduled for January 12, 2009. At the hearing, Attorney Yost stated the motion had been withdrawn. N.T. 1/12/09, at 2.

This appeal followed. Both the trial court and Kelly complied with Pa.R.A.P. 1925.

■ With this factual and procedural background, we now address the issue Kelly raises on appeal. As noted above, Kelly argues the trial court erred in not granting his post-sentence motion to withdraw his guilty plea. In addressing this issue, this Court held:

> [P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. [*Commonwealth v. Flick*, 802 A.2d 620, 623 (Pa.Super.2002)]. A defendant must demonstrate that manifest injustice

would result if the court were to deny his post-sentence motion to withdraw a guilty plea. *Id., citing Commonwealth v. Gunter*, 565 Pa. 79, 771 A.2d 767 (2001); [*Commonwealth v. Kirsch*, 930 A.2d 1282, 1284 (Pa.Super.2007)]. "Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily." *Commonwealth v. Hodges*, 789 A.2d 764, 765 (Pa.Super.2002), *citing Commonwealth v. Persinger*, 532 Pa. 317, 615 A.2d 1305 (1992). In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. *Commonwealth v. Flanagan*, 578 Pa. 587, 854 A.2d 489, 500 (2004).

*Commonwealth v. Broaden*, 980 A.2d 124, 129 (Pa.Super.2009), *appeal denied*, —— Pa. ——, 992 A.2d 885 (2010).

Kelly argues he did not waive or forfeit his right to counsel, and therefore, the trial court erred in granting counsel's motion to withdraw and refusing to appoint other counsel for him which left Kelly, at the time set for his trial, in the position of representing himself.

■ In addressing Kelly's claim, we consider the following authorities.

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense. Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel. However, the constitutional right to counsel of one's own choice is not absolute. Rather, the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in

the swift and efficient administration of criminal justice. Thus, while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.

*Commonwealth v. Lucarelli,* 601 Pa. 185, 193–94, 971 A.2d 1173, 1178–79 (2009) (citations omitted).

Our Supreme Court also noted:

The situation is different for a defendant who is not employing counsel at his own expense, and who, at public expense, seeks court-appointed counsel. Such a defendant does not have a right to choose the particular counsel to represent him. *Commonwealth v. Moore,* 534 Pa. 527, 539, 633 A.2d 1119, 1125 (1993) (citing *Commonwealth v. Johnson,* 428 Pa. 210, 213, 236 A.2d 805, 807 (1968)), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995). Nor, after counsel has been appointed, can he change to other assigned counsel unless a substantial reason exists for the change. Pa.R.Crim.P. 316(c)(ii) (delineating "Assignment of Counsel") [Now Pa.R.Crim.P. 122]; *Moore,* 534 Pa. at 539, 633 A.2d at 1125; *Commonwealth v. Williams,* 514 Pa. 62, 67–68, 522 A.2d 1058, 1061 (1987).

*Commonwealth v. Rucker,* 563 Pa. 347, 350, 761 A.2d 541, 542 n. 1 (2000).

In *Lucarelli,* our Supreme Court also stated:

Like the Superior Court in *Commonwealth v. Thomas,* 879 A.2d 246, 257–59 (Pa.Super.2005), we find persuasive the distinction between waiver and forfeiture made by the Third Circuit Court of Appeals in *United States v. Goldberg,* 67 F.3d 1092, 1099–1101 (3d Cir.1995). Waiver is "an intentional and voluntary relinquishment of a known right." *Id.* at 1099. By contrast, forfeiture, as de-fined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." *United States v. Thomas,* 357 F.3d 357, 362 (3d Cir.2004) (quoting *Goldberg, supra* at 1100–02) . . . . .

The consequences of the distinction between waiver of the right to counsel and forfeiture of the right to counsel are significant because, we now hold, Pa. R.Crim.P. 121 and its colloquy requirements do not apply to situations where forfeiture is found. To hold otherwise would permit a recalcitrant defendant to engage in the sort of obstructive behavior that mandates the adoption of the distinction between forfeiture and waiver in the first instance. Should an unrepresented defendant choose not to engage in the colloquy process with the trial court, were there no provision for forfeiture of counsel, that defendant could impermissibly clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. Such a result would be untenable. *See United States v. Thomas, supra* at 362 ("Forfeiture can result regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding pro se.") (quoting *Goldberg, supra* at 1101).

*Id.* at 194–95, 971 A.2d at 1179.

The factual background of this case clearly shows this is not a waiver of counsel case. Kelly never formally waived his right to counsel, nor did the trial court engage Kelly in a Rule 121 colloquy for waiver of counsel.

The trial court, instead, denied Kelly's right to counsel on another basis: inten-

tional forfeiture by engaging in dilatory conduct.

In *Goldberg*, the Third Circuit defined "intentional forfeiture" as follows:

> [T]here is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel.
>
> . . . .
>
> These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se*. Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."

*Goldberg*, 67 F.3d at 1100–01 (citations omitted).

The question is whether the trial court erred in making such finding. We conclude it did not.

While neither the United States Supreme Court nor our Supreme Court has expressly ruled on the level of misconduct or defiance that may give rise to forfeiture, we hold, under the circumstances of the case, Kelly knowingly forfeited his right to counsel. In reaching this conclusion we are guided by federal cases that have found defendants' dilatory conduct resulted in forfeiture of their rights to be represented by assigned counsel.[7]

In *United States v. Fazzini*, 871 F.2d 635 (7th Cir.), *cert. denied*, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989), the Seventh Circuit summarized the procedural history as follows:

> Defendant went to trial without counsel after four court-appointed attorneys had either been dismissed by him or excused by the court. Defendant's first appointed attorney, Richard Leng, withdrew from the case on March 13, 1986. The court then appointed Sheila Murphy to represent the defendant. Murphy withdrew on August 5, 1986 and was replaced by Carl Clavelli. On September 12, 1986, the defendant told the court that he was discharging Mr. Clavelli because "he has neglected my case." At that point the trial court told the defendant that no new counsel would be appointed and expressly found that he had knowingly and voluntarily waived his right to counsel. Shortly thereafter, on September 16, the trial judge agreed to appoint Richard Kling as counsel for the

---

**7.** For Pennsylvania case law dealing with forfeiture as result of defendant's dilatory conduct, *see Lucarelli, supra* (defendant appeared without counsel at trial five weeks after the trial court had given defendant access to $20,000 specifically to retain new attorney); *Commonwealth v. Coleman*, 905 A.2d 1003 (Pa.Super.2006) (defendant, who had the financial means to retain counsel, appeared without counsel on several occasions after having dismissed them or engaged in conduct forcing them to withdraw); *Commonwealth v.*

*Wentz*, 280 Pa.Super. 427, 421 A.2d 796 (1980) (defendant, who was not eligible for court-appointed counsel, appeared without counsel at his arraignment. Although the arraignment judge had already admonished defendant to retain counsel, he appeared at subsequent pre-trial colloquy without counsel and failed to give any reasonable explanation for not retaining counsel). We recognize, obviously, the case at hand differs from *Lucarelli, Coleman* and *Wentz* in that Kelly here was eligible for court-appointed counsel.

defendant after Kling assured the judge that he was amenable to the appointment. The court warned the defendant that "[t]his is it. If things don't work out with Mr. Kling, this is it. . . ." Kling's representation only lasted until October 8, 1986, when he moved to withdraw from the case based on an "irreparable conflict" with the defendant. The court granted the motion and the defendant proceeded without counsel after the district court again expressly found that the defendant, through his actions, had knowingly and voluntarily waived the right to counsel. The court did, however, appoint Mr. Kling to act as shadow counsel for the defendant, a position in which Kling remained throughout the defendant's trial and sentencing.

*Id.* at 641–42.

The Seventh Circuit then noted:

In this case, the defendant claims that he did not knowingly and intentionally waive his right to appointed counsel since he continued to ask for counsel even after [fourth defense counsel] was excused from the case. Yet it is not necessary that a defendant verbally waive his right to counsel; so long as the district court has given the defendant sufficient opportunity to retain the assistance of appointed counsel, defendant's actions which have the effect of depriving himself of appointed counsel will establish a knowing and intentional choice. [*Wilks v. Israel*, 627 F.2d 32, 35–36 (7th Cir.1980) ]; *United States v. Moore*, 706 F.2d 538, 539 (5th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983).

In *Moore*, the trial court appointed "several attorneys," each of whom was rejected by the defendant. Following the appointment of the defendant's third attorney, the judge, just as Judge Williams did in this case, warned the defendant that failure to cooperate with the fourth appointed attorney would signal a waiver of the right to counsel. Just prior to trial, the defendant moved to have new counsel appointed as a result of his inability to get along with counsel. The court refused to appoint new counsel and, after prevailing upon the fourth appointed attorney to act as shadow counsel, found that the defendant had waived his right to counsel. The defendant eventually was convicted and appealed claiming that the district court denied him his right to counsel. The appellate court rejected that claim holding that "a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel." [*Moore*, 706 F.2d] at 540.

This case involves facts which closely parallel the facts in *Moore*. The district judge in this case, just like the district judge in *Moore*, faced a defendant who refused to cooperate with numerous appointed counsel, who was warned of the consequences that his failure to cooperate would have, and who insisted, despite his conduct, that he was not waiving his right to appointed counsel. We agree with the Fifth Circuit that given this set of circumstances, the defendant has knowingly and intelligently waived his right to appointed counsel.

*Fazzini*, 871 F.2d at 642 (footnote omitted).[8]

▬▬ We find also relevant the following analysis:

---

**8.** In *Fazzini*, the Seventh Circuit framed the issue as one of waiver. However, as the Third Circuit noted in *Goldberg, supra*, defendant's conduct in *Fazzini* is more appropriate termed as "intentional forfeiture." *See Goldberg*, 67 F.3d at 1101.

The Constitution does not force an unwanted attorney upon a defendant. [*Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942) ]; [*Minor v. United States*, 375 F.2d 170, 172 (8th Cir.), *cert. denied*, 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177 (1967) ].

["]If the defendant does not agree with his counsel, he has a right to present his own contentions; but the sovereign is under no duty to search for counsel until it finds one who will agree with him.["] [*Jackson v. United States*, 258 F.Supp. 175, 184 (N.D.Tex.1966) ].

And in [*Williams v. Beto*, 354 F.2d 698 (5th Cir.1965) ], involving a habeas attack upon the effectiveness of counsel, that Court stated:

[When one seeks the assistance of counsel, he thereby confesses his own inadequacy in the field and stipulates his willingness, like any other client ... to be bound by the presumably superior knowledge of the professional man on whose assistance he proposes to depend. He agrees that this attorney will be in charge of his defense in the legal battle about to begin.... If the indigent client, conferred upon and trusted to the lawyer, knows more about what ought to be done in handling the case, then he needs no counsel and it is folly for him to ask for it.]

[*Id.* at 705–706.]

The case here is not unlike that of [*United States ex rel. Davis v. McMann*, 386 F.2d 611 (2nd Cir.1967) ], wherein that Court, quoting at length from the record, held:

[We have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel.... He may not use this right to play a 'cat and mouse' game with the court ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel. More particularly is this so when, during trial, the defendant discharges his counsel.]

[*Id.* at 618–19 (citations omitted) ].

*Kates v. Nelson*, 435 F.2d 1085, 1088–89 (9th Cir.1970).[9]

Here, the trial court faced a situation similar to *Fazzini* and *Moore*. Kelly was a criminal defendant who had been unwilling to cooperate with all three counsel assigned to him; who argued all counsel were incompetent because they refused to argue what he believed was the law; who, the day after his *pro se* motion to withdraw his first guilty plea was granted, filed *pro se* an omnibus pre-trial motion seeking suppression of evidence on a ground the trial court had already addressed (validity of search warrant); who wanted a counsel, but only one who would please him; who treated appointed counsel with disdain; whose trial had been already postponed because he could not agree with assigned counsel (counsel 2); who had been warned by the trial court that failure to cooperate with assigned counsel (counsel 3) would result in him representing himself *pro se* at trial; who sought to have other counsel appointed to him (who would have been counsel 4) and postpone the trial instead of trying to cooperate with counsel 3; and

9. Here, as noted, Kelly did not (nor could he) discharge Attorney McCabe. Attorney McCabe, however, in light of Kelly's attitude, filed a petition to withdraw from representing Kelly, which Kelly did not oppose because he did not get along with him. Additionally, Kelly specifically asked the court to appoint other counsel to replace Attorney McCabe.

who clearly was not interested in listening closely what Judge Blackwell was telling him, consumed as he was in making his point counsel were ineffective and he knew the law better than assigned counsel. We have no difficulty concluding the trial court did not err in finding Kelly intentionally forfeited his right to counsel.[10]

In considering all other circumstances surrounding the plea agreement, it is clear Judge Chronister gave Kelly all possible information to make an informed decision and Kelly carefully pondered his options. The following exchange illustrates this point:

[Kelly]: In the meantime, I'm forced to take that [*i.e.*, guilty plea] or—I'm forced to take that on being violated, being violated in the process.

[Judge Chronister]: You're not forced to do anything.

[Kelly]: I understand that, but I'm being violated in the process.

[Judge Chronister]: Clearly I'm not forcing you to do anything.

[Kelly]: Right. I understand.

[Judge Chronister]: All I'm telling you is your options, and I think there [were] some things done improperly here.

[Kelly]: Very improperly.

[Judge Chronister]: Which I can't do anything about and you're stuck with. So you can say, "I want to fight it, I'm going to trial, and I don't care what happens." Be my guest, that's your right and privilege. Or you can say, "you know what, I really was over the limit on the blood test, and I better cut my losses and get out of this the best I can, because I've got myself in pretty deep here through all these things that have happened, and if I don't cut my losses, it's going to be twice as bad." Th[ese are] basically your choices. You can cut your losses and take the year and be done with it and give up all this stuff that happened and say, "Well, stuff happens," or you can say, "I want to fight this whole thing, and I don't care," in which case we'll go ahead with the trial, you'll get your sentence, and you can go ahead and fight everything you want to fight, and it it's very possible in the long run you'll actually spend more time in jail as a result of doing it that way, and you won't be successful because even if you appeal and say, "I should have had an attorney," and you'll be back here facing the same trial, and if you have an attorney, it really isn't going to help you if you're still going to admit, "Yes, I was drinking; yes, I took the test; yes, the result was this." Your attorney can't help you.

N.T., 12/11/08, at 22–23.[11]

In light of the foregoing, because Kelly's claim he was improperly deprived of his

---

**10.** To the extent Kelly argues Judge Blackwell erred in not appointing other counsel after granting McCabe's petition to withdraw, the request, which could be construed as a motion for change of counsel, was properly denied. "The decision of whether to appoint new counsel lies within the sound discretion of the trial court." *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139, 1150 (2000) (citing *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462, 465 (1975)). *Commonwealth v. Collins*, 598 Pa. 397, 446, 957 A.2d 237, 266 (2008). *See also* Pa.R.Crim.P. 122(C). Based on the circumstances of the case, we hold the trial court did not abuse its discretion in denying Kelly's motion for change of counsel.

**11.** *See also* Kelly's written guilty plea colloquy, questions 35 and 36. Question 35: "Has anybody forced you, threatened you, or coerced you directly or indirectly to enter this plea(s) of guilty?" Kelly answered "No"; Question 36: "Are you doing this of your own free will?" Kelly answered "Yes." Kelly himself wrote the answers and the initials at the bottom of page. Guilty Plea Colloquy, 12/11/08, at 8.

right to counsel is without merit, after reviewing the totality of the circumstances surrounding the plea, we conclude Kelly knowingly, voluntarily, and intelligently tendered his guilty plea and the trial court did not err in denying his post-sentence motion to withdraw it.

Judgment of sentence affirmed.

By arguing on appeal he was forced into taking the plea, Kelly is essentially saying he did not answer the above questions or Judge Chronister truthfully. We remind Kelly that "[a] defendant is bound by the statements he makes during his plea colloquy, and may not assert grounds for withdrawing the plea that contradict statements made when he pled." *Commonwealth v. Stork*, 737 A.2d 789, 790–91 (Pa.Super.1999) (citation omitted). *See also Commonwealth v. Cappelli*, 340 Pa.Super. 9, 489 A.2d 813 (1985): "A criminal defendant who elects to plead guilty has a duty to answer questions truthfully." *Id.* at 819 (citation omitted).