J-S24043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JACOB ANDREW FISHER | : | |
| Appellant | : | No. 1431 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 20, 2023
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s):  CP-03-CR-0000627-2021

BEFORE:   BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: October 23, 2024**

Appellant, Jacob Andrew Fisher, appeals from the judgment of sentence entered in the Court of Common Pleas of Armstrong County after a bench trial resulted in his convictions on Driving Under the Influence of a Controlled Substance ("DUI"), 75 Pa.C.S. § 3802(d)(1)(ii) and 75 Pa.C.S. §3802(d)(2), and other traffic offenses under Title 75.   After careful review, we affirm.

On June 30, 2020, Appellant was arrested for DUI on various traffic offenses.  He was eligible for representation by the Armstrong County Public Defender's Office, but the Defender's office had a conflict of interest with representing him, so, the trial court appointed counsel to represent him at his preliminary hearing scheduled for June 29, 2021.  What ensued from this initial appointment of counsel was a series of motions to withdraw filed by

_____

[*] Former Justice specially assigned to the Superior Court.

multiple counsel appointed to represent Appellant, who remained in pretrial detention leading up to his eventual non-jury trial of January 13, 2023.

In chronicling the sequence of withdrawals granted to court-appointed defense counsel, we begin with the most recent one. On April 8, 2022, the trial court entertained a "Motion to Terminate Court Appointment" filed by Attorney Timothy R. Miller, who six weeks earlier had become the fourth court-appointed criminal defense lawyer in four months to represent Appellant in his DUI case.[1] Careful not to breach attorney-client privilege, Attorney Miller summarized for the court his position that "discussions [with Appellant] have been quite contentious throughout, and I think the relationship, unfortunately, in this brief period of time has reached a point where it's irreconcilably broken, for lack of a better term, that the differences are too much to overcome." N.T. at 3-4.

A persistent frustration of purpose, according to Attorney Miller, was Appellant's refusal to move on from his "repeated conversations and it's, you know, an hour conversation where we go over the same thing three, four, five times, and then we do it again the next day and the next day. It was – and I understand maybe my advice isn't always what you want to hear, but it's sometimes the reality of the situation." N.T., 4/8/22, at 4.

By order of the court dated April 8, 2022, the trial court "denied at this time" Attorney Miller's motion to withdraw as counsel, noting that the order

---

[1] This court notes with displeasure the inordinate number of counsel appointed for this Appellant.

should not be construed to condone inappropriate conduct by Appellant or "to in any way restrict counsel's ability to reapproach the Court and raise this issue." Order, 4/8/22.

With that, Attorney Miller represented Appellant on his June 1, 2022, counseled omnibus pretrial hearing seeking, among other things, to reinstate his preliminary hearing on grounds that prior counsel had ineffectively waived Appellant's rights to the hearing. At the hearing, Attorney Miller asked the trial court to grant his motion to withdraw or, in the alternative, to revoke the order appointing him as counsel for Appellant because, in his words, "our relationship and our dynamic has just hit a point, Your Honor, that the differences are so irreconcilable at this point, I do not know how to proceed." N.T., 6/1/22, at 3. Attorney Miller expounded,

> **Atty. Miller:** We have had at least our tenth argument out in the hallway here moments ago. We are just not on the same page on anything here, Your Honor. I've never had to deal with this situation. It's just so difficult where working with somebody – and I am trying to choose my words carefully understanding that Mr. Fisher does have attorney-client privilege here, but it honestly feels like I am swimming uphill the entire time during this representation. I have been called a liar. I've been called every name under the book in the last few weeks.
>
> **Prosecutor:** Your Honor, I have no objection to Attorney Miller's request. I've only heard through two or three layers of what's been going on, but I was able to see and hear it for myself today, just bits and pieces of things the defendant is saying to Mr. Miller. It's not just disrespectful; it's horrible, it's mean, it's disgraceful. I haven't seen this very often in my career.

N.T. at 3-4.

The trial court acknowledged that it was prepared "to act" on Attorney Miller's motion, but Attorney Miller agreed with the court's suggestion to hold the motion in abeyance and continue representing Appellant at the hearing. N.T. at 6. Attorney Miller began, however, by acknowledging that as an officer of the court he had a duty to disclose that he recently learned the facts alleged in the motion he prepared were untrue such that, in his opinion, Appellant's motion was rendered moot. N.T. at 7. Instead, Attorney Miller proposed that the only issue for the trial court's consideration was whether Appellant had knowingly, voluntarily, and intelligently waived his preliminary hearing on the advice of counsel. *Id*.

Appellant took the stand and acknowledged that during the time in question, he spent pretrial detention in the Allegheny County Jail from March 8, 2021, until September 1, 2021. N.T. at 16-17. During this time, he recalled, he participated in a video conference represented by his first court-appointed defense counsel, Attorney Stephanie McFadden. Also participating in the video conference were ADA Rebecca Lozzi, Pennsylvania State Trooper Elliott, and District Judge DeComo. N.T. at 17.

Appellant testified that he asserted at the video conference that Attorney McFadden had a conflict both because she recommended he waive his preliminary hearing and because she related to him that she knew the arresting state trooper since they were children. N.T. at 18. Appellant also claimed Attorney McFadden said, "I don't care if you have a preliminary hearing or not." *Id*.

- 4 -

When asked if he believed she meant she did not care about his defense or if she meant only that it made no difference to her if he chose to have a hearing, he believed she cared about neither his due process rights nor his statements and opinions about his defense. N.T. at 19. Attorney Miller asked if Attorney McFadden overtly disregarded his due process rights or ideas about his defense, but Appellant simply repeated his answer that she said, "I do not care if you have a hearing or not, a preliminary hearing or not." N.T. at 19.

Appellant recalled that the purpose of the video conference was to learn his wishes about whether to waive or proceed with a preliminary hearing. N.T. at 19. He noted that Judge DeComo observed there were no grounds to have Attorney McFadden removed from his case. N.T. at 20. Appellant also admitted he has a "terrible memory" and could not remember if he said to Judge DeComo that he wanted to waive his preliminary hearing to "get it over with", or words to that effect, as were attributed to him. N.T. at 22-23.

Attorney McFadden testified that she has practiced criminal defense work since 1995. N.T. at 25-26. She recounted that she represented Appellant pursuant to her county contract as conflict counsel for the public defender's office. N.T. at 26. She confirmed she attended the June 29, 2021, preliminary hearing video conference at Judge DeComo's office.

According to Attorney McFadden, she spoke with Appellant on the phone the night before the conference and again on the morning of the preliminary hearing. She admitted that during her private video conversation with Appellant prior to the court conference she "must have said" she knew

Pennsylvania State Trooper Kalnik since he was a boy, but she explained they were little more than acquaintances as children and have had no personal or social relationship as adults. N.T. at 27. She added that never in the several defense cases she worked in which Trooper Kalnik was the arresting officer did she "conflict[] out." N.T. at 28.

Attorney McFadden turned to the difficulties she encountered in her representation of Appellant during their private meeting held prior to his preliminary hearing. *Id*. She maintained that she explained to him the purpose of a preliminary hearing and shared her opinion on the best-case and worst-case scenarios given what she knew about the facts. N.T. at 28-29. Her explanations aligned with what she would normally say to defendants in such a circumstance. N.T. at 29.

Nevertheless, Attorney McFadden explained, "Appellant did not like my explanations. He constantly interrupted. He constantly tried to explain the law to me. Kept telling me how I was wrong." N.T. at 29. She continued,

> So, it was that back-and-forth exchange about whether he was going to have a hearing or not have a hearing. And to the point where I was exasperated with trying to actually determine what he wanted to do. And it's like, you know, to me it doesn't matter. If he wants to have a hearing, that's fine. You know, we discussed the facts of the case and his side of the story as opposed to the affidavit of probable cause.

N.T. at 29-30.

She related that because of District Judge DeComo's full schedule that day, Appellant's teleconference was given the last time slot, which provided

only enough time to decide whether Appellant wished to waive his preliminary hearing or to proceed with a preliminary hearing that would be scheduled for a later date. *Id*. She testified that she explained to Appellant he "has a right to have a preliminary hearing, but my argument, my explanation was to him that if he wanted a hearing, it couldn't be that day. . . . So, it doesn't matter to me. If you want to have a hearing, we will have a hearing, but it can't be today. N.T. at 29-30. If he wished to waive it, she explained to him, Judge DeComo would fax the waiver form to the jail for his signature. N.T. at 29.

Attorney McFadden recollected that the teleconference "took a substantial amount of time" consisting of "constant back and forth" before it became "clear that he did not like me. He didn't want to hear anything I had to say to him no matter what I said or how I said it." N.T. at 31. When Appellant said there was a "conflict," Attorney McFadden interpreted that to mean he wished to have a different attorney. N.T. at 32. She remembered Judge DeComo saying he would look into it, but for the meantime Appellant had to decide if he wished to schedule a preliminary hearing for another day or waive it today, and Appellant said he would waive it. N.T. at 32. Accordingly, Attorney McFadden signed the waiver form at the judge's office, Judge DeComo signed it in her presence, and they faxed it to Appellant to sign at the jail. N.T. at 32-33. Appellant, however, refused to sign.

The record further demonstrates that Appellant filed a *pro se* Motion Requesting Appointment of New Counsel on October 26, 2021, stating that "current counsel is biased and any advice given by Stephanie McFadden is

tainted" because she previously represented his co-defendant in a prior, unrelated matter. Motion to Withdraw as Counsel (Attorney McFadden), 11/23/21, at 1. Attorney McFadden next spoke to Appellant by telephone on Monday, November 23, 2021, and again Appellant requested a new attorney, stating he was still very unhappy and dissatisfied with Attorney McFadden. *Id*.

Later that same day, Attorney McFadden filed her motion to withdraw as counsel, which the trial court granted on November 30, 2021. On the next day, December 1, 2021, the trial court appointed Attorney Joseph Hudak as the second defense attorney to represent Appellant in the DUI matter. Order of Court, 12/1/21.

On January 25, 2022, however, Attorney Hudak filed a "Motion to Withdraw as Counsel", stating, "The undersigned is always thankful for court appointments, and the undersigned welcomes challenges in all aspects of criminal representation. It is believed, however, that the undersigned counsel cannot at this time meet the needs of this Defendant." Motion to Withdraw as Counsel (Attorney Hudak), 1/25/22. By order of court dated January 26, 2022, the Court granted Attorney Hudak's motion to withdraw as counsel.

On February 7, 2022, the trial court appointed Attorney Lisa Peluso as the third defense counsel in three months to represent Appellant for his upcoming trial scheduled for the week of March 7, 2022. One week later, Attorney Peluso filed with the court a "Consent Motion to Withdraw as Counsel." In Attorney Peluso's motion, she averred that,

> On the morning of February 10, 2022, [Appellant] called the law offices of undersigned and almost immediately began screaming at counsel and making demands for various motions and filings against other attorneys, courts, jails and other authoritative bodies.
>
> Undersigned looked into a few issues raised by Mr. Fisher that arguably could have had merit and found that neither had any merit by counsel's assessment after numerous phone calls and hours of research into the matters.
>
> Undersigned phoned Mr. Fisher later in the day to ask to meet with him at the Armstrong County Courthouse the following week and proposed two times to meet hoping to explain these matters in person and to be able to reason with Mr. Fisher and continue to represent him.
>
> [After advising Attorney Peluso by telephone that he could not meet due to transportation issues, he] again became very verbally assaultive towards undersigned when undersigned tried to explain the matters over the phone.
>
> Due to the concerning behavior of Mr. Fisher along with the requests for motions and other actions to be filed to which counsel is aware would likely have no merit, undersigned cannot properly represent Mr. Fisher.
>
> . . . .

Attorney Peluso's "Consent Motion to Withdraw as Counsel", 2/14/22, at 1-2.

On February 15, 2022, the trial court granted Attorney Peluso's motion to withdraw.

On February 23, 2022, the trial court entered its Order of Court appointing Attorney Miller as the fourth court-appointed counsel in four months to represent Appellant for his upcoming criminal trial. Significantly, the order observed that Appellant's misconduct forced Attorney Peluso to seek withdrawal and served notice that with the appointment of Attorney Miller,

"This defendant should know that this Court will not grant any further appointments for counsel." Order of 2/23/22.

At the conclusion of the hearing on Appellant's omnibus pretrial motion, described *supra*, Attorney Miller restated his oral motion to withdraw as counsel. N.T. at 42. The trial court repeated the admonishment it issued in the Order granting Attorney Peluso's motion to withdraw, stating, "Mr. Fisher, I will tell you this, if I grant Mr. Miller's motion, I am not appointing any other attorney. . . . [T]hat will be the fourth attorney to withdraw. I will not appoint another." *Id*.

After the hearing, the trial court denied the omnibus motion, determining that Appellant waived his preliminary hearing with the competent assistance of Attorney McFadden, such that he was not entitled to have his preliminary hearing reinstated. Furthermore, the trial court granted Attorney Miller's motion to withdraw as counsel upon finding Appellant had flouted the trial court's warning that it would do so if he subjected Attorney Miller to the same type of verbal abuse he directed at prior counsel.

As such, the trial court concluded that by Appellant's intransigent, obstructive, and abusive conduct toward all court-appointed counsel, he had forfeited the right to receive further representation at trial by court-appointed counsel. Appellant's case proceeded to a January 13, 2023, non-jury trial where he represented himself and was found guilty on all charges. On June 20, 2023, the trial court sentenced Appellant to 72 hours to six months' incarceration, with 72 hours to be served in Armstrong County Jail and the

remainder on parole. Appellant filed the present, timely, counseled appeal on July 24, 2023.

Appellant raises the following questions for this Court's consideration:

1. Did the trial court err by concluding that Mr. Fisher forfeited his right to counsel?

2. Did the trial court err by compelling Mr. Fisher to proceed to trial without counsel?

3. Should this case be remanded for further proceedings to permit Mr. Fisher to raise and develop the record for a claim of ineffective assistance of pre-trial motion counsel?

Brief of Appellant at 7.

Appellant's first and second issues coalesce to posit that the record before the trial court did not support its determination that he had forfeited his right to appointed counsel through conduct. Although both Attorney Miller and Assistant District Attorney Gleixner reported generally to the trial court that Appellant directed abusive and demeaning language toward Attorney Miller, Appellant argues, absent a specific account of Appellant's comments— particularly where Appellant denied making any "disgraceful" comments—the trial court failed to confirm the occurrence of sufficiently serious misconduct or dilatory conduct to conclude he had forfeited his right to counsel. We disagree.

It is well settled that a criminal defendant's right to counsel is not absolute. *See Commonwealth v. Fill*, 202 A.3d 133, 140 (Pa. Super. 2019). A defendant may waive or forfeit the right to counsel. Waiver requires an intentional and voluntary relinquishment of the right to counsel. *See Commonwealth v. Staton*, 120 A.3d 277, 286 (Pa. 2015) (internal citation and

- 11 -

quotation marks omitted). When a defendant waives the right to counsel, Rule 121 requires a thorough colloquy to ensure the defendant's waiver is knowing, intelligent, and voluntary. *See* Pa.R.Crim.P. 121(A)(2); *Commonwealth v. Phillips*, 93 A.3d 847, 853 (Pa. Super. 2014) (noting, in a direct appeal, that this Court must first determine whether the trial court has met the minimum requirements of Rule 121).

The forfeiture of the right to counsel is distinct from waiver and applies when a defendant engages in "extremely serious misconduct" or "extremely dilatory conduct." *See Staton*, 120 A.3d at 286 (internal citation and quotations omitted). When a defendant forfeits the right to counsel, a court need not engage in a Rule 121 colloquy. *See id*. The question of whether a defendant forfeited the right to counsel is a question of law, over which our standard of review is *de novo* and our scope of review is plenary. *See Fill*, 202 A.3d at 139.

*Commonwealth v. Torres-Olan*, 290 A.3d 650 (Pa. Super. 2022) (non-

precedential memorandum), *appeal denied*, 301 A.3d 866 (Pa. 2023).

Forfeiture of counsel has been supported by extremely dilatory conduct

by defendants who have been appointed counsel.

For example, in *Commonwealth Kelly*, 5 A.3d 370, 373-77, 381 (Pa. Super. 2010), the defendant was uncooperative with all three attorneys appointed to represent him and argued that all three were incompetent because they refused to argue his view of the law. *Id.* at 381. After the trial court allowed the first attorney to withdraw, when Kelly could not agree with the second lawyer, the court delayed trial a second time, appointed new counsel, and warned Kelly that failure to cooperate with the third lawyer would result in him proceeding *pro se*. *Id.* When Kelly asked the court to postpone the trial again and to appoint a fourth attorney, the trial court allowed the third attorney to withdraw but refused to appoint further counsel. *Id.* Under those circumstances, we had "no difficulty" affirming the trial court's conclusion that the Kelly had conducted himself so as to forfeit his right to counsel. *Id.*

Because forfeiture of the right to counsel may occur even with situations where a defendant has been appointed counsel, we must look to the circumstances of this case to evaluate whether

> Appellant engaged in extremely dilatory conduct that supported the lower court's finding of forfeiture. ***See Commonwealth v. McClendon***, 293 A.3d 658, 669 (Pa. Super. 2023) ("Our focus is upon a defendant's conduct and not on the number of counsel that may lead to a forfeiture decision. The duration and persistence of the defendant's dilatory conduct, and the delays occasioned thereby, can lead to forfeiture of counsel even though only one attorney was involved in the case.").

***Commonwealth v. Berrien***, No. 1685 EDA 2022, 2024 WL 3022087, at *5 (Pa. Super. filed June 17, 2024) (non-precedential decision), ***reargument denied*** (Aug. 20, 2024).[2]

In reviewing the facts and procedural history of the present case, we discern in Appellant's dealings with his four court-appointed counsel an unyielding pattern of either deliberately obtuse or extremely abusive behavior that any reasonable person in his position would understand could have no other effect but to frustrate a defense lawyer's purpose and cause great delay in bringing his case to trial. Indeed, the trial court had the opportunity to view Appellant's performance in self-representing at his criminal trial, and it perceived little impairment on his part in either hearing witnesses and other speakers or understanding the context of proceedings. Consequently, the trial court concluded that Appellant's highly contentious relationship with counsel

_____

[2] Pursuant to Pa.R.A.P. 126(b) (effective May 1, 2019):

> (1) As used in this rule, "non-precedential decision" refers to an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019 ...

> (2) Non-precedential decisions as defined in (b)(1) may be cited for their persuasive value.

reflected an intentional, vexatious refusal to cooperate with the court and counsel in processing his case:

> [Appellant] had engaged in a pattern of verbally abusive conduct toward his counsel and had evidenced a clear unwillingness to cooperate with them. The [trial] court concluded that by engaging in ongoing vexatious conduct, [Appellant] forfeited his right to court-appointed counsel. The court's order informed [Appellant] that he could proceed either pro se or with the assistance of privately-retained counsel.
>
> . . .
>
> [Appellant] then explained that his auditory processing disorder affects his hearing, and that it takes him a little bit to process what he hears. He believed that his attorney quiet because he was annoyed he had to deal with that. The court offered to accommodate [his] disability, and informed him that microphones will be in use, and to ask a witness to repeat an answer if necessary. Fisher cross-examined the two witnesses and never once asked either of them to repeat an answer.
>
> . . .
>
> While [Appellant] had contended that his counsel withdrew because of frustration with [his] auditory issues and need to continually have things repeated to him, [his] performance and conduct at trial belie his contentions.
>
> The motion to withdraw by Attorney Peluso and the testimony of Attorneys McFadden and Miller convinced the court that [Appellant's] contentious behavior toward all of them was rooted in his insistence that they act contrary to their ethical obligations. His attorneys explained to him what he needed to know, not what he wanted to hear. Instead of cooperating with his attorneys, he lashed out at them for not doing what he wanted them to, even though such actions were meritless and could violate their ethical duties.
>
> . . .

- 14 -

> All of [Appellant's] court-appointed attorneys have extensive experience in criminal law and were quite capable of representing [him], et his behavior toward them illustrates that no capable, ethical attorney can represent him, and he has therefore forfeited his right to counsel.

Trial Court Opinion, at 11-12.

Just as this Court affirmed under quite similar facts in **Kelly**, we deem no error in the trial court's decision that Appellant forfeited his right to counsel when he continued his reprehensible abusive treatment of counsel, which included directing invectives at them and deliberately wasting their time, disregarding their sound advice, and calling them incompetent for not adopting his meritless legal views, and when he essentially scoffed at the trial court's admonition that it would not appoint a fifth counsel to represent him if he persisted in behaving this way toward Attorney Miller. Under this record, we affirm the trial court's conclusion that Appellant conducted himself in such a way as to forfeit his right to counsel.

In Appellant's remaining issue, he argues in his brief that because "pre-trial counsel rendered ineffective assistance and [Appellant] will not be eligible for any relief after the end of the direct appeal, this case should be remanded for further proceedings." Brief of Appellant at 20.

In **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013), the Pennsylvania Supreme Court reaffirmed its holding in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), that absent certain limited circumstances, "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict

motions; and such claims should not be reviewed upon direct appeal." ***Holmes***, ***supra***, 79 A.3d at 576.

The ***Holmes*** Court identified two narrow exceptions to this general rule: (1) in "an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted[;]" or (2) where the trial court "in its discretion, and for good cause shown, permit[s] post-verdict review of multiple, and indeed comprehensive, ineffectiveness claims if such review is accompanied by a waiver of PCRA rights[.]" ***Id.*** at 577, 578 (footnote omitted). Subsequently, we underscored that as "specifically indicated in ***Holmes***, it is within the purview of the trial court's discretion to determine whether review at the post-verdict stage of the ineffectiveness claims is appropriate." ***Commonwealth v. Burno***, 94 A.3d 956, 971 (Pa. 2014).

Here, Appellant's ineffectiveness claim does not meet either exception described above, as Appellant failed to first raise this claim with the trial court. Specifically, as to the first exception, the trial court did not conclude that Appellant's claim was either "meritorious" or "apparent from the record." ***Holmes***, ***supra***, 79 A.3d at 577. Second, Appellant did not waive his PCRA

rights at a time when the trial court still had jurisdiction. Therefore, we conclude that Appellant's ineffectiveness claim is not properly before us.[3]

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/23/2024

---

[3] We recognize that Appellant presents this ineffective assistance of counsel claim on direct appeal in anticipation that his short sentence will expire prior to the disposition of his direct appeal, thus making him ineligible for PCRA relief. **See** 42 Pa.C.S. § 9543(a)(1)(i). The Supreme Court has explained, however, that while one of the purposes of the **Grant** exceptions was to benefit defendants serving short sentences, those claims were still subject to the "constraints and consequences" outlined in **Holmes**, **supra** at 577-578. **See Commonwealth v. Turner**, 80 A.3d 754, 763 n.7 (Pa. 2013), _cert. denied_, 134 S.Ct. 1771 (U.S. 2014).