J-A04045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RALPHEL BERRIEN, III | : | |
| | : | |
| Appellant | : | No. 1685 EDA 2022 |

Appeal from the Order Entered June 5, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001132-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RALPHEL BERRIEN, III | : | |
| | : | |
| Appellant | : | No. 2345 EDA 2022 |

Appeal from the Order Entered June 5, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001131-2017

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED JUNE 17, 2024**

Appellant, Ralphel Berrien, III, appeals *nunc pro tunc* from the judgments of sentence imposed by the Lehigh County Court of Common Pleas, after a jury found him guilty of stalking and harassment[1] at CP-39-CR-

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2709.1(a)(2) and 2709(a)(7), respectively.

0001131-2017, and criminal trespass[2] at CP-39-CR-0001132-2017. He claims that the trial court erred in allowing him to proceed *pro se* for trial, where he lacked the financial means to retain private counsel, and by failing to conduct an on-the-record colloquy concerning the waiver of his right to counsel pursuant to Pa.R.Crim.P. 121. Upon careful review, we affirm.

Since Appellant's lone claim on appeal alleges a trial court error claim involving pre-trial procedures, a summary of the facts presented at trial is unnecessary for our review. We thus address the procedural history of the matter. Counsel from the Lehigh County Public Defender's Office represented Appellant beginning with the entry of an appearance on April 26, 2017. That counsel (Attorney Ritter) was permitted to withdraw from representation on June 6, 2017. Appellant subsequently retained private counsel (Attorney Neely) who entered his appearance on June 27, 2017. Within three months, that attorney was permitted to withdraw from representation after a breakdown in their "communication lines" with Appellant. Counsel Withdrawal Motion, 9/7/17, ¶ 3; Order, 9/12/17, 1. Appellant then unsuccessfully litigated pre-trial motions *pro se* and, on January 9, 2018, the court appointed standby counsel (his originally appointed counsel, Attorney Ritter). Order, 1/9/18, 1. Appellant proceeded to trial and a jury found him guilty of the above-referenced offenses on April 26, 2018.

---

[2] 18 Pa.C.S. § 3503(a)(1)(i).

On June 5, 2018, the court sentenced Appellant to an aggregate term of 58 to 120 months' imprisonment.[3]  The trial court appointed counsel on the day after sentencing and Appellant thereafter litigated a timely-filed post-sentence motion that the court denied on June 20, 2018.   While still represented by counsel, Appellant filed a timely, *pro se* notice of appeal. Appellant later requested the withdrawal of his newly appointed counsel, and the trial court granted that request after a hearing on October 11, 2018.  On October 1, 2019, this Court quashed Appellant's *pro se* direct appeal due to non-compliance with the then-recent Pennsylvania Supreme Court decision in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (holding that the common practice of filing a single notice of appeal from an order involving more than one docket would no longer be tolerated and that practice violated Pa.R.A.P. 341, which required the filing of separate appeals from an order that involves issues arising on more than one docket; failure to file separate appeals generally requires an appeal court to quash appeal).[4]   **See**

---

[3] The aggregate sentence included forty to eighty-four months' imprisonment for stalking and a concurrent term of six to twelve months' imprisonment for harassment at CP-39-CR-0001131-2017, to be followed by a consecutive term of eighteen to thirty-six months' imprisonment for criminal trespass at CP-39-CR-0001132-2017.

[4] Our Supreme Court has since held, in **Commonwealth v. Young**, 265 A.3d 462, 477 n.19 (Pa. 2021), that quashal is not mandatory where the appellant fails to comply with **Walker**.  Instead, as long as the appeal is timely, we may permit the appellant to correct the error.  Additionally, following **Walker** and **Young**, Pa.R.A.P. 902 was amended to align with the holdings in those decisions.  **See** Pa.R.A.P. 902(a)-(b).

*Commonwealth v. Berrien*, No. 2059 EDA 2018, 2019 WL 4864145, *2 (Pa. Super., filed Oct. 1, 2019) (unpublished memorandum).

On October 17, 2019, Appellant timely filed a *pro se* petition for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Counsel was appointed and, on March 4, 2020, filed a motion to withdraw along with a **Turner**/**Finley** no-merit letter.[5]  After the PCRA court issued notice of its intent to dismiss the petition pursuant to Pa.R.Crim.P. 907, the court granted the counsel withdrawal motion, Appellant filed a *pro se* response, and the court dismissed the petition on April 29, 2020.  Appellant filed timely *pro se* notices of appeal in each of his underlying criminal matters and we consolidated the resulting appeals *sua sponte*.  On June 8, 2022, we found that Appellant's counsel who was appointed during the post-sentence motions period provided ineffective assistance by not filing amended notices of appeal to perfect a direct appeal for Appellant.  **Commonwealth v. Berrien**, No. 1208 EDA 2020, 2022 WL 2063646, *4 (Pa. Super., filed June 8, 2022) (unpublished memorandum).  We thus vacated the order denying PCRA relief and remanded for the reinstatement of Appellant's direct appeal rights *nunc pro tunc*.  **Id.**  On August 16, 2022, the PCRA court ordered the reinstatement of Appellant's direct appeal rights *nunc pro tunc* and granted a new request from Appellant for the appointment of counsel.

_____

[5] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

- 4 -

Before and after the PCRA court's further action on remand, Appellant filed a *pro se* notice of appeal on June 21, 2022, and a counseled notice of appeal on September 13, 2022, that initiated the instant appeals. The PCRA court issued an order pursuant to Pa.R.A.P. 1925 on September 15, 2022. On October 10, 2022, Appellant attempted to file a *pro se* concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which is a nullity for our purposes because he had counsel of record at that time.[6]

On November 16, 2022, we issued separate rule to show cause orders in each of these appeals. At docket number 1685 EDA 2022, we pointed out that the *pro se* notice of appeal was seeking to appeal our former unpublished memorandum in which we vacated the denial of PCRA relief and ordered a remand for the reinstatement of Appellant's direct appeal rights *nunc pro tunc*,

_____

[6] We note that, as appreciated by the trial court in its order on December 2, 2022, Appellant failed to file a counseled response to the court's September 15, 2022 order pursuant to Rule 1925. Order, 12/5/22, 1. Ordinarily, when a counseled defendant fails to file a court-ordered concise statement of errors complained of on appeal, this Court "may remand for appointment of new counsel, the filing or service of a Statement *nunc pro tunc*, and the preparation and filing of an opinion of a judge." Pa.R.A.P. 1925(c)(3). We decline to remand for further proceedings because the trial court originally addressed Appellant's pre-trial forfeiture of his right to counsel in its opinion filed for Appellant's original direct appeal that was quashed and the court's analysis provides its rationale for not conducting a colloquy pursuant to Pa.R.Crim.P. 121, which is the focus of the instant appeal. **See** Trial Court Opinion, 11/27/18, 15-17. We also decline to remand for Rule 1925 non-compliance as a remand would suit no purpose where the trial court's former opinion is adequate to inform our present review. Moreover, the Commonwealth has not sought waiver on the basis of Rule 1925 non-compliance and the present assigned jurist for the lower court is not the same judge who sat as the trial court. **See** Appellee's Brief at 1 n.1 (referring to the trial court's 2018 opinion).

- 5 -

and that the notice of appeal was not in compliance with **Walker**. At docket number 2345 EDA 2022, we pointed out that the counseled notice of appeal was seeking to appeal the PCRA court's order that reinstated Appellant's direct appeal rights *nunc pro tunc*, it did not list the appropriate trial court docket number for CP-39-CR-0001131-2017, and it was not in compliance with **Walker**.

Appellant filed a *pro se* response to the rule to show cause order at docket number 1685 ED 2022 and a counseled response to the other order at docket number 2345 EDA 2022. In the latter response, counsel requested leave of court to allow Appellant to amend the notice of appeal to reflect the original sentencing order as the order on appeal. Answer to Rule to Show Cause, 11/23/22, 2. Counsel asked for the "appeal under 2345 EDA 2022 to proceed under trial court docket number CP-39-CR-0001131-2017 only." **Id.** 2-3. This Court issued orders finding that both notices of appeal did not comply with **Walker**. In light of **Young**, we directed Appellant to file two amended notices of appeal in the trial court. Counsel filed amended notices of appeal on January 23, 2023. On April 10, 2023, this Court permitted the attorney who filed the amended notices of appeal to withdraw from representation. After the appointment of another attorney, present counsel was appointed. Order, 5/3/23, 1.

Appellant subsequently filed an application to proceed *pro se* which caused present counsel to file an application to withdraw which additionally requested a vacation of Appellant's briefing schedule. Before there was any

ruling on those applications, counsel filed the Brief for Appellant that is currently pending. Based on the filing of the brief, this Court denied counsel's application to withdraw and forwarded intervening *pro se* attempted filings to counsel.[7] Order 7/10/23, 1.

Appellant presents the following question for our review:

> Where the Appellant does not have the financial wherewithal to obtain private counsel, is he entitled to a new trial where the trial court erred in failing to conduct an on the record colloquy with him pursuant to Pa.R.Crim.P. Rule 121 to determine if his waiver of the right to counsel through all critical stages of a criminal proceeding was knowing, voluntary and intelligent?

Appellant's Brief at 4 (capitalization and suggested answer omitted).

Appellant alleges that the trial court erred by not conducting a waiver of counsel colloquy pursuant to Pa.R.Crim.P. 121, and violated his state and federal constitutional rights by leaving him as an indigent individual with "no option but to represent himself at trial without the benefit of being advised of the consequences and pitfalls of such a decision." Appellant's Brief at 14-22. He asserts that a waiver of counsel colloquy should have been conducted when he "fired" his initial appointed counsel and was told that he would need to either retain private counsel or proceed *pro se*. *Id.* at 17.

The trial court advises in its prior opinion that a claim that the court erred by denying Appellant the right to counsel and by compelling him to proceed *pro se* would fail as meritless because Appellant had forfeited the

_____

[7] Prior to this appeal being placed on the current panel, we also denied a counseled application for bail pending appeal. Order, 10/26/23, 1.

right to counsel. Trial Court Opinion, 11/27/18, 15. The court elaborated on that point as follows:

> Here, contrary to Appellant's assertions, the Appellant had the benefit of both public and private attorneys over the course of his legal proceedings. Appellant immediately became dissatisfied with his appointed counsel and fired him. Appellant was warned on the record that the Public Defender would not be available at any later stage. However, Appellant wanted the opportunity to seek a private lawyer and had the necessary funds to do so. Appellant, again, became dissatisfied with private counsel as it seemed no attorney could live up to the standards set by Appellant. After a review of the record, it is clear that Appellant had ample opportunity find counsel of his choosing. Appellant's behavior over the course of eleven (11) months is sufficiently disruptive to mandate a conclusion of extremely dilatory conduct.
>
> This is further supported by Appellant's *pro se* actions. When it became clear that Appellant could not find a suitable attorney he proceeded to represent himself *pro se* through an endless bombardment of pre-trial motions. Although the Court addressed each motion raised by Appellant, he continued to raise the same issues in an effort to delay. Finally, the Court informed Appellant that his trial would be scheduled regardless and he filed numerous premature appeals. Therefore, the Court did not err in finding that Appellant forfeited his right to counsel.

*Id.* at 16-17 (footnote and citations omitted). Upon finding that Appellant waived his right to counsel through extreme dilatory conduct, the trial court relied on, *inter alia*, our Supreme Court's opinion in ***Commonwealth v. Lucarelli***, 971 A.2d 1173, 1179-80 (Pa. 2009) (holding that Pa.R.Crim.P. 121 and its colloquy requirements do not apply to situations where forfeiture of counsel is found and that Lucarelli's behavior over an 8.5 month span "was sufficiently obstructive to mandate a conclusion of forfeiture because he

engaged in extremely dilatory conduct"). Trial Court Opinion, 11/27/18, 16-17.

Appellant points out that the forfeiture by extremely dilatory conduct holding of **Lucarelli** explicitly applies to defendants with the financial means to privately retain counsel. Appellant's Brief at 18, **citing Lucarelli**, 971 A.2d at 1179 ("We hold today that where a defendant's course of conduct demonstrates his or her intention not to seek representation by private counsel, *despite having the opportunity and financial wherewithal to do so*, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel.") (quote partially stated in brief; emphasis added). He thus distinguishes the applicability of that case based on his alleged indigency prior to trial. He notes that he remained continually incarcerated for almost a year leading up to the commencement of his trial, he stated to the court that he lacked the resources to privately retain counsel, and his former private counsel had been paid by his father. Appellant's Brief at 19-20. He faults the trial court for not inquiring into his professed lack of financial resources or making accommodations to his bail to allow him to access funds to secure counsel. **Id.** at 20. He also suggests that the trial court further hampered his ability to retain counsel by calling him a "problematic client." **Id.** at 20 & n.2, **citing** N.T. 6/6/17, 6.

The Commonwealth as appellee asserts that a colloquy under Rule 121 only would have been appropriate if Appellant had sought to waive counsel

and instead the trial court "appropriately deemed" that he "forfeited his right to counsel." Appellee's Brief at 14. The Commonwealth argues:

> The trial court correctly ruled that Appellee forfeited his right to counsel. During the course of these proceedings, which lasted nearly fifteen (15) months, Appellant was represented by both publicly-funded and privately-hired attorneys. Appellant was never able to engage in a productive relationship with his attorneys because he simply did not want to hear what he did not want to hear. He even went as far as asking his privately-funded attorney to engage in actions that the attorney described as "unethical." After Attorney Neely withdrew as counsel, Appellant requested additional time at several status conferences so that he could secure private counsel. This, along with a multitude of *pro se* court filings and premature appellate filings, many of which were duplicative and not served on the Office of the District Attorney, served no purpose other than to thwart the state's efforts to effectively administer justice. The alleged victim… had to wait more than a year to see her stalker's case brought to a conclusion.
>
> Appellant had the opportunity to be represented by a competent, publicly-funded, court-appointed attorney, but chose to terminate Attorney Ritter's representation after being advised that he was thereby giving up representation through the public defendant's office. While Appellant had the right to be represented by counsel, that right does not extend to counsel of his own choosing, or counsel who will blindly do Appellant's bidding.

Appellee's Brief at 22-23 (footnote omitted).

In response to the Commonwealth's argument, Appellant notes that the trial court misadvised him as to his right to appointed counsel at times when the court should have conducted a colloquy pursuant to Rule 121. Appellant's Reply Brief at 3-4, ***citing*** N.T. 6/6/17, 5-6, and N.T. 11/01/17, 2. As for his supposed dilatory conduct, Appellant asserts that his *pro se* pre-trial motions

did not cause delay because the trial court "simply ignored them" and that he never actually delayed the scheduled trial date. Appellant's Reply Brief at 5.

The question of a whether a trial court committed an error by applying the doctrine of forfeiture of the right to counsel presents a pure question of law for which we apply a *de novo* standard of review. *Lucarelli*, 971 A.2d at 1178.

Those accused of crimes have a right to the assistance of counsel. U.S. Const. Amend. VI; Pa. Const. Art. I, § 9. The right to counsel extends not only to "certain summary proceedings, at trial, guilty plea hearings, sentencing," but also to "every 'critical stage' of a criminal proceeding." *Commonwealth v. Johnson*, 158 A.3d 117, 122 (Pa. Super. 2017), *quoting Commonwealth v. Phillips*, 83 A.3d 847, 853 (Pa. Super. 2014). The right to counsel "is not absolute." *Lucarelli*, 971 A.2d at 1178. A criminal defendant can waive or forfeit the right to counsel. *Id.* at 1179-89; *see also* Pa.Crim.P. 121(a).

In *Lucarelli*, our Supreme Court explained that waiver is "an intentional and voluntary relinquishment of a known right." *Id.*, 971 A.2d at 1179 (*quoting United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir. 1995)). On the other hand, forfeiture does not require any intent to relinquish a right, but rather arises from a defendant's "extremely serious misconduct" or "extremely dilatory conduct." *Lucarelli*, 971 A.2d at 1179 (citations omitted). Accordingly, the requisite of a colloquy to ensure that the defendant's waiver of the right to counsel is made knowingly, voluntarily, and intelligently does

not apply to circumstances where forfeiture is found. *Id.* While Appellant claims that the trial court erred by not conducting a waiver of counsel colloquy pursuant to Pa.R.Crim.P. 121, the focus of our review should be whether the record supported the trial court's finding of a forfeiture of the right to counsel as a proper finding of forfeiture relieved the trial court of its obligation to conduct a waiver colloquy. *Id.* at 1179 ("we now hold, Pa.R.Crim.P. 121 and its colloquy requirements do not apply to situations where forfeiture is found").

The defendant in *Lucarelli* failed to retain counsel despite having more than eight months to prepare for trial and the financial means to hire an attorney. *Lucarelli*, 971 A.2d at 1176-77. He had privately retained counsel on multiple occasions, but the trial court allowed counsel to withdraw when the attorney-client relationship deteriorated. *Id.* Five weeks before trial, the trial court gave Lucarelli access to funds to retain counsel, but he failed to do so by the start of trial and had no explanation for not having done so. *Id.* Our Supreme Court concluded that Lucarelli engaged in "extremely dilatory conduct" supporting the forfeiture of his right to counsel. *Id.* at 1180.

Appellant, in the instant case, attempts to the distinguish *Lucarelli* and the application of the concept of forfeiture of the right to counsel by pointing out that he, unlike Lucarelli, lacked the "financial wherewithal" to just hire a new attorney. That distinction is unavailing as forfeiture of counsel has also been supported by extremely dilatory conduct by defendants who have been appointed counsel. For example, in *Commonwealth Kelly*, 5 A.3d 370, 373-77, 381 (Pa. Super. 2010), the defendant was uncooperative with all three

attorneys appointed to represent him and argued that all three were incompetent because they refused to argue his view of the law. *Id.* at 381 After the trial court allowed the first attorney to withdraw, when Kelly could not agree with the second lawyer, the court delayed trial a second time, appointed new counsel, and warned Kelly that failure to cooperate with the third lawyer would result in him proceeding *pro se*. *Id.* When Kelly asked the court to postpone the trial again and to appoint a fourth attorney, the trial court allowed the third attorney to withdraw but refused to appoint further counsel. *Id.* Under those circumstances, we had "no difficulty" affirming the trial court's conclusion that the Kelly had conducted himself so as to forfeit his right to counsel. *Id.*

Because forfeiture of the right to counsel may occur even with situations where a defendant has been appointed counsel, we must look to the circumstances of this case to evaluate whether Appellant engaged in extremely dilatory conduct that supported the lower court's finding of forfeiture. *See Commonwealth v. McClendon*, 293 A.3d 658, 669 (Pa. Super. 2023) ("Our focus is upon a defendant's conduct and not on the number of counsel that may lead to a forfeiture decision. The duration and persistence of the defendant's dilatory conduct, and the delays occasioned thereby, can lead to forfeiture of counsel even though only one attorney was involved in the case.").

At his arraignment on June 6, 2017, Appellant informed the trial court that he had "fired" his first attorney, David D. Ritter from the Lehigh County

Public Defender's Officer, at his preliminary hearing because Attorney Ritter did not "have [his] best interests." N.T. 6/6/17, 4-5. The court asked him if he wanted to continue with representation from Attorney Ritter and Appellant responded, "No, I don't. I want -- for the second time I want him to be fired." *Id.* at 5. The court then warned Appellant that if he proceeded to "fire" his appointed counsel that he would not get a subsequent appointment of counsel:

> THE COURT: Okay. So please understand that if you fire Mr. Ritter, then your choices are that you can find a private attorney or you can represent yourself. Do you understand that?
>
> [APPELLANT]: I understand that, Your Honor.
>
> THE COURT: Okay. And if you can't find an attorney or you choose not to represent yourself, the public defendant's office will not have you back. Do you understand?
>
> [APPELLANT]: Yes.
>
> THE COURT: All right. And is it correct that you do not wish to have Mr. Ritter represent you going forward?
>
> [APPELLANT]: No. He has -- he doesn't have my best interests at all.

*Id.* at 5-6. Prior to thereafter permitting Attorney Ritter to withdraw from the case, the court warned Appellant, based on the court's prior experience[8] with him, that he would have trouble finding counsel that would satisfy him:

---

[8] Appellant later summarized this prior experience, which included two prior criminal matters, as follows: "The first case was a plea deal, and the second case was a jury trial, in which [Appellant] appealed and filed a PCRA, in which [the court] ruled in [Appellant's] favor." N.T. 9/12/17, 4.

- 14 -

> THE COURT: Mr. Berrien, if you were a person who was just before me for the first time, I would be urging you to consider Mr. Ritter, and I would be telling you what his duties are, and I would be urging you to reconcile with one another.
>
> But you and I have experience with one another, and I have to tell you, Mr. Berrien, that if I were a defense lawyer, I'd hide under my desk if the file were coming my way. Because you are what we call a problematic client. You don't listen. You don't want to take anyone's advice. You know better than everybody else in the room.
>
> And so if you are certain that you no longer want Mr. Ritter, I'm sure he is happy to be relieved of you. But please know, this is not going to go smoothly for you because you are not going to find anybody who is going to be able to adequately represent you to your standards…

*Id.* at 6-7.

Appellant then retained his second attorney, private counsel Craig B. Neely (Attorney Neely), to whom the court gave a 42-day continuance to review the discovery in the matter. N.T. 6/27/17, 2-3. After that continuance, the trial court scheduled a pretrial hearing for September 12, 2017. N.T. 8/8/17, 2-3. On that date, the court considered a withdrawal motion filed by Attorney Neely. N.T. 9/12/17, 2. Attorney Neely informed the court that the motion was filed due to a breakdown in the attorney-client relationship arising both from conduct by Appellant that impeded counsel from proceeding in the matter and an inappropriate request that Appellant asked of him:

> [Attorney] Neely: Yes, Judge. When I accepted the representation of Mr. Berrien, I understood that some other counsel has had some difficulty with Mr. Berrien. I thought that under the circumstances, we would be able to have a decent attorney/client relationship. But as time has evolved, we have

- 15 -

been unable to have what I would consider a productive relationship.

He has -- I can't divulge things that he said to me, but clearly he indicated elements of my representation and, frankly, my character as a lawyer and called that into question. And, in fact, at one point asked me to do something that was improper and unethical.

And, as a result, his behavior has seriously impaired my ability to act reasonably as his counsel under the rules that apply to me in doing my job, and I find that it's not possible for me to continue to represent Mr. Berrien in these two cases.

*Id.* at 2-3. Appellant did not object to the withdrawal request prior to the court granting it. *Id.* at 3. A trial date was not scheduled at that time as Appellant requested time to retain new counsel. *Id.* at 4.

Appellant made further continuance requests for the purpose of seeking new counsel on October 17, 2017, and November 21, 2017. N.T. 10/17/17, 2; N.T. 11/21/17, 2. On the latter date, Appellant informed the court that he "ran out of funds to raise to raise for an attorney because [he] was relying on a refund from [Attorney] Neely that [Attorney Neely had supposedly] promised [to Appellant's] father." N.T. 11/21/17, 2. Appellant asked for an appointment of counsel and the court replied, "Time I can give you. An attorney I can't. I warned you … when you released the public defender that that would be it. They won't take you back. So if you need time, I'll give you time." *Id.*

At the next listing on January 9, 2018, Appellant litigated a *pro se* motion for writ of *habeas corpus*. Appellant broached the subject of his lack of counsel and the court offered to appoint standby counsel:

[APPELLANT]: Also, I want to know, shouldn't I have an attorney present as well?

THE COURT: Where?

[APPELLANT]: For my hearing that I'm having right now.

THE COURT: Well, I had given you the opportunity to either hire someone or represent yourself. You've not come up with anyone yet. The public defender is not available to you any longer. I don't know what else to do.

[APPELLANT]: All right. Because I -- I would -- I thought that I would -- if I represented myself that I would have somebody to be on the side to advise me.

THE COURT: Well, if you're asking me to appoint standby counsel, I can do that, but that's going to be somebody from the public defender's office.

[APPELLANT]: Yes.

THE COURT: Okay. Well, I can do that from here on out…

N.T. 1/9/18, 16-17; *id.* at 22 (standby counsel appointment ordered).

After the denial of the *habeas* motion, Appellant addressed his lack of counsel with the court as follows:

[APPELLANT]: I don't want to legally represent myself, but you guys pushed my back against the wall.

THE COURT: Yes. Yes, we did.

[APPELLANT]: And I'm supposed to have --

- 17 -

THE COURT: I did, actually.

[APPELLANT]: -- legal representation at every –

THE COURT: You had two.

[APPELLANT]: -- court proceeding.

THE COURT: You had two.

[APPELLANT]: I should have as many as I can until I have --

THE COURT: No, no, no, no.

[APPELLANT]: Until I get legal representation.

THE COURT: You don't get to burn through attorneys like tissues. It doesn't work that way.

[APPELLANT]: Well, for one, you heard Mr. Ritter. He cancelled our appointment, and then he was late for my preliminary.

THE COURT: I heard Mr. Ritter.

[APPELLANT]: He wasn't ready.

THE COURT: He said he was able and willing and ready to do the hearing, and he did. And he did just that, and he did exactly what I would have expected to hear at a preliminary hearing. He's a very good attorney.

[APPELLANT]: I'm sure he is.

THE COURT: You burned through Mr. Neely.

[APPELLANT]: He was a DA for --

THE COURT: And now you have no one.

[APPELLANT]: He was a DA for over 20 years. I understand that.

THE COURT: When you fire the public defender's office, you burn that bridge. They will not be reappointed. You cannot have them again.

[APPELLANT]: I understand that, Your Honor. But we didn't even go over my case, and he said he was ready when we didn't even go over my case.

N.T. 1/9/18, 27-29.

At the next listing, Appellant brought up his right to counsel, denied that he waived his right to counsel, and maintained that he asked for a new appointed counsel. The court continued to maintain, consistent with its earlier warning, that new counsel would not be appointed after Appellant fired his original appointed counsel:

[APPELLANT]: But I did not waive counsel. I asked you to appoint me a court-appointed attorney.

THE COURT: Right. And I told you at that point when you got rid of Mr. Ritter that I would not do that, that you could either hire an attorney or you could proceed on your own. That's the choice when you fire the public defender.

[APPELLANT]: Okay.

N.T. 2/13/18, 6. By then, the original appointed counsel, Attorney Ritter, had returned to service in the case as newly-appointed standby counsel. Appellant then expressed entitlement to someone other than his former counsel as his standby counsel:

[APPELLANT]: -- so how did you appoint me Mr. Ritter?

THE COURT: He is your standby counsel now.

[APPELLANT]: How is that possible?

- 19 -

THE COURT:  Because I think I asked you if you wanted standby counsel, and you said yes.  And so, therefore, I made Mr. Ritter your standby counsel.

[APPELLANT]:  I want to know, after he's withdrawn, how is he back on my case?

THE COURT:  For that reason, that I asked you, do you want him to be available as standby counsel, and you said yes.

[APPELLANT]:  Yeah.  As standby counsel --

THE COURT:  Right.

[APPELLANT]:  -- not the same one that was withdrawn.

THE COURT:  That's what you get.

[APPELLANT]:  That's not what I get.  Under the constitutional law, I don't get that.

*Id.* at 7-8.  After addressing additional concerns with Appellant, the trial court set a trial date for April 17, 2018.  *Id.* at 13.

On March 27, 2018, the trial court presided over a hearing to address pending pre-trial motions.  Appellant again addressed his lack of counsel in passing.  N.T. 3/27/18, 66.  At the end of the hearing, Appellant informed the court that he asked for Attorney Ritter "to remove himself" from the case as standby counsel and suggested that Attorney Ritter asked him to make the request "so [he could] have a different court-appointed standby attorney." *Id.* at 71.  The court refused the request as an attempt to "pick and choose" a new appointed attorney.  *Id.* at 72 ("THE COURT: You don't get to pick and choose amongst the public defender's office who you get … I'll allow Mr. Ritter

to be released from that role, but I'm not going to appoint anybody else at this late date."). Appellant then maintained that Attorney Ritter was supposedly disqualified from the matter, but the court again clarified that Attorney Ritter was originally withdrawn from the case because Appellant chose not to have his representation. *Id.* at 73.

Before the hearing was concluded on that date, Appellant repeated his request for appointment of a new standby counsel as follows:

> [APPELLANT]: … And then you tell me when I disqualify Mr. Ritter that I have problems taking authority when I don't need to take authority from him. If he's my lawyer, he is supposed to take authority from me.
>
> THE COURT: No. That's probably not quite true.
>
> [APPELLANT]: Well, mostly it is.
>
> THE COURT: Okay. So you don't want Mr. Ritter to try the case for you.
>
> [APPELLANT]: I want another standby to --
>
> THE COURT: Well, that's not going to happen.
>
> [APPELLANT]: It's conflict of interests. How are you going to keep giving me somebody that -- that is a conflict of our interests --
>
> THE COURT: All right.
>
> [APPELLANT]: -- from the preliminary to now?
>
> THE COURT: Okay.
>
> [APPELLANT]: And you know that. That was on the recording that [the prosecutor] has.

- 21 -

THE COURT: All right. Then, Mr. Berrien, we're going to just continue to disagree. We're not really making any headway here.

N.T. 3/27/18, 82-83.

At another pre-trial listing on April 20, 2018, in which the court reviewed Appellant's denial of a plea offer, Appellant again brought up his lack of counsel but, this time, he completely denied the circumstance in which he originally "fired" his initial appointed counsel and continued to maintain that that attorney had been "disqualified" from the case:

> [APPELLANT]: Because I did not waive my right to counsel, and I never -- I have never mentioned that I wanted to be pro se because I'm not competent to self-represent myself.
>
> THE COURT: Well, you've had all this time, Mr. Berrien, to hire another attorney, and you haven't done anything to that end.
>
> [APPELLANT]: Well, I'm an indigent defendant.
>
> THE COURT: Understood. But what we discussed at least three or four times is the fact that once you have the public defender's office and you fire them in order to have private counsel, it is their policy that they will not take you back.
>
> [APPELLANT]: Well, I didn't fire the public defender's office to have private counsel. I fired [Attorney] Ritter, and he -- he had his own law firm.
>
> THE COURT: No, no. He was representing you through the public defender's office. And once you fired him, you fired the public defender's office. You hired private counsel. Again, it's their policy that they will not take you back. And so I went over with you more than enough times the fact that your options were to hire a new attorney or to represent yourself with standby counsel. Those are the only options.
>
> [APPELLANT]: Now, standby counsel is from the public defender's office as well; correct?

- 22 -

THE COURT: That's the only place you can get standby counsel from.

[APPELLANT]: But once [Attorney] Ritter was disqualified, he was disqualified from representing me on this matter.

THE COURT: He is not representing you. He is available to answer your questions. He is available to serve subpoenas. He is available to handle exhibits in court. He is available to send out an investigator. Those are the things he is available to do. He is not representing you. You are representing yourself.

N.T. 4/20/18, 4-6.

At the end of the hearing, Appellant requested a continuance to retain

private counsel which the court rejected:

[APPELLANT]: Your Honor, I would like a continuance, so I can retain counsel because I cannot proceed with --

THE COURT: No. You've had ample time to retain counsel.

[APPELLANT]: I have not. I have been trying to have --

THE COURT: You have had ample time to retain counsel.

[APPELLANT]: -- him withdrawn.

THE COURT: [Commonwealth], your position on Mr. Berrien's request for continuance?

[PROSECUTOR]: I'm opposed to it --

THE COURT: Okay.

[PROSECUTOR]: -- because he has said the same thing for months and months and months.

THE COURT: Okay. Then we're good. We're good to go on Tuesday.

- 23 -

N.T. 4/20/18, 10-11.

On the first day of Appellant's trial on the following week, Appellant appeared in prison garb rather than offered civilian clothing, and the court asked him about his attire. Appellant responded, "Well, I -- I don't want this trial to start because I don't have representation." N.T. 4/24/18, 6. After the court recounted the history of the case in which Appellant had the opportunity to be represented by the public defender, he chose to hire private counsel, and then was provided with standby counsel, the court explained that Appellant had forfeited his right to counsel "by intentionally not seeking representation, by intentionally not responding to [the court's] suggestions or [the court's] inquiries, and that [his] purpose [was] to try and delay or just to be obstreperous." *Id.* at 7. Appellant again alleged a conflict with the public defender's office, and the court corrected him that there was never an established conflict and that he instead chose to fire the public defender's office and retain private counsel. *Id.* at 9. Appellant then asserted that he fired his appointed counsel because of a supposed conflict of interest. *Id.* at 9-10. Appellant told the court that it was required to conduct a colloquy with him pursuant to Pa.R.Crim.P. 121 and the court responded that it was not required to conduct the colloquy because he had forfeited his right to counsel. *Id.* at 10-11. Jury selection and the trial then proceeded.

Reviewing all these exchanges in their proper context, there was never a moment at which the trial court should have conducted a colloquy pursuant to Pa.R.Crim.P. 121 because Appellant **never** waived the right to be

represented by counsel in this matter. At the same time, the trial court did not force Appellant to go without representation. Instead, the record supports the trial court's conclusion that Appellant forfeited his right to counsel through extremely dilatory conduct.

Here, Appellant "fired" his initial public representation and then his attorney-client relationship with a retained attorney soured when he made an "improper and unethical" request of that attorney. N.T. 6/6/17, 4-6; N.T. 9/12/17, 2-3. He then asked for two months of continuances to get a new private attorney without demonstrating efforts to retain counsel in that period. N.T. 10/17/17, 2; N.T. 11/21/17, 2. At the listing in which he asked for the second continuance, he expressed that he "ran out of funds" and asked for a new appointment of counsel and the court gave him additional time to seek private counsel. N.T. 11/21/17, 2. The court rejected the request for a new appointment because it had earlier warned Appellant that it would not do so upon the firing of his initial appointed counsel. *Id.*; *see also* N.T. 6/6/17, 5-6.

In the ensuing pretrial listings, Appellant made multiple statements suggesting that his request to initially seek private counsel and then pursue another private attorney after Attorney Neely withdrew from the case were examples of gamesmanship to get a public attorney appointment of his choosing or at least another attorney other than his initial appointed counsel, Attorney Ritter. He told the court, "I should have as many [attorneys] as I can" at one point. N.T. 1/9/18, 27-29. After Attorney Ritter had been

reinstated to the case as standby counsel, Appellant suggested that it would be unconstitutional for Attorney Ritter to be his standby counsel given his prior withdrawal after being "fired" by Appellant, and then suggested that Attorney Ritter was somehow removed from the case for a conflict of interest even though no conflict had been proposed or found and Appellant had clearly "fired" Attorney Ritter as his counsel. N.T. 2/13/18, 7-8; N.T. 3/27/18, 73, 82-83; N.T. 4/20/18, 4-6. In the process of doing so, he even suggested that he asked Attorney Ritter to seek his own withdrawal as standby counsel as a way for Appellant to get a different standby attorney. *Id.* at 71. When those overtures did not result in Appellant getting a different public attorney as standby counsel, Appellant returned to prior efforts of asking for additional time to retain private counsel even though he was claiming to be indigent at the same listing, days before his scheduled trial. N.T. 4/20/18, 4-6, 10-11.

The trial court characterized Appellant's efforts in these various exchanges as attempts to "try and delay or just to be obstreperous," N.T. 4/24/18, 7, and we are unable to disagree with that assessment. Appellant's efforts to ask for more time to seek private counsel and then seek public representation by someone other than his original public counsel caused enough delay that the trial could not proceed until more than ten months after he fired his initial public counsel with the delays mostly resulting from Appellant's changing stances on his desired representation. The obstreperous description was apt where Appellant seemed to be lying to the trial court about the circumstances of Attorney Ritter's original withdrawal when he suggested

a disqualification for a conflict of interest when Appellant plainly "fired" the attorney.

Based on our review of the record, we agree with the trial court that Appellant forfeited his right to counsel and thus there was no need to conduct a colloquy pursuant to Rule 121. Appellant's refusal to be represented by Attorney Ritter in the initial pre-trial stage, his inability to cooperate with both Attorney Ritter and Attorney Neely, and his subsequent attempts to seek a public attorney other than Attorney Ritter as his standby counsel suggested that Appellant only wanted counsel of his choice or one who would personally satisfy him. As in **Kelly**, Appellant – even as a supposedly indigent defendant – forfeited his right to counsel by engaging in a "cat and mouse game" throughout the pre-trial proceedings in order to now claim that by bringing his case to a trial, the trial court arbitrarily deprived him of his right to counsel. **See Kelly**, 5 A.3d at 381, **quoting with approval United States ex rel. Davis v. McMann**, 386 F.2d 611, 618-19 (2d Cir. 1967) (A defendant "may use [the right to proceed *pro se*] to play a 'cat and mouse' game with the court … or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel"). At the same time, we appreciate that Appellant was not only playing this game with the trial court but also his victim who was awaiting the trial.

While this case presents a slightly closer decision than the one made in ***Kelly***, as Appellant failed to cooperate[9] with two attorneys rather than three, we do not find that the trial court committed an error by finding forfeiture of the right to counsel through extreme dilatory behavior and thus declining to conduct a colloquy under Rule 121 on this record. ***See Lucarelli***, 971 A.2d at 1179 (holding that Pa.R.Crim.P. 121 does not apply when a defendant forfeits the right to counsel and defendants "should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice," and explaining that "[t]o hold otherwise would permit a recalcitrant defendant to engage in the sort of obstructive behavior that mandates the adoption of the distinction between forfeiture and waiver in the first instance"); ***Kelly***, 5 A.3d at 381-82 (holding that a forfeiture of counsel was not error because, *inter alia*: (1) Kelly was unwilling to cooperate with all three counsel assigned to him; (2) he argued that all three counsel were incompetent because they refused to argue what he believed was the law; (3) his trial had been postponed because he could not agree with his second counsel; and (4) he wanted a fourth counsel

---

[9] Appellent's initial firing of Attorney Ritter could be equated with lack of cooperation as would his request of some unspecified improper or unethical act by Attorney Neely.

assigned to him and the postponement of the trial instead of trying to cooperate with his third counsel).[10]

Judgments of sentence affirmed.

_____

[10] In these precise circumstances, the court was not required to appoint an attorney other than Attorney Ritter before making its finding of forfeiture. *See **Kelly***, 5 A.3d at 381, ***citing Jackson v. United States***, 258 F.Supp. 175, 184 (N.D.Tex. 1966) ("If the defendant does not agree with his counsel, he has a right to present his own contentions; but the sovereign is under no duty to search for counsel until it finds one who will agree with him."). To do so would violate the precept that a defendant who seeks court-appointed counsel "does not have a right to choose the particular counsel to represent him." ***Commonwealth v. Rucker***, 761 A.2d 541, 542 n.1 (Pa. 2000), ***citing Commonwealth v. Moore***, 633 A.2d 1119, 1125 (Pa. 1993). Here, Appellant made no request for a reappointment of Attorney Ritter beyond the standby counsel assignment, evinced a lack of interest in Attorney Ritter's involvement in the case even as standby counsel, and was not entitled to a change of assigned public counsel unless a substantial reason existed for a change in counsel from the original assignment. *See* Pa.R.Crim.P. 122(C) ("A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons."); ***see also Commonwealth v. Spotz***, 756 A.2d 1139, 1150 (Pa. 2000) (noting that satisfaction of the "substantial reason" burden under the precursor rule to Rule 121(C) required a demonstration that the defendant "has an irreconcilable difference with counsel that precludes counsel from representing him" which lies within the discretion of the trial court); ***Commonwealth v. Ganjeh***, 300 A.3d 1082, 1092 (Pa. Super. 2023) ("We have held that a strained relationship with counsel, a difference of opinion in trial strategy, a lack of confidence in counsel's ability, or brevity of pretrial communications do not necessarily establish irreconcilable difference.").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 6/17/2024