J-A26010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAZEL W. BURGWIN JR. | : | |
| | : | |
| Appellant | : | No. 1130 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 16, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0005316-2019

BEFORE: BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED: February 6, 2025**

Hazel W. Burgwin Jr. appeals from the aggregate sentence of eleven and one-half to twenty-three months' confinement, followed by four years of probation, imposed upon his convictions for unlawful restraint, simple assault, recklessly endangering another person, and harassment. We vacate and remand for resentencing.

On July 1, 2019, the Commonwealth charged Appellant with the above offenses, as well as two counts of aggravated assault, relating to an attack upon a female victim in his apartment. As will be discussed in greater detail below, the case did not proceed to a bench trial until May 18, 2023, nearly four years later. Throughout the pendency of the matter, Appellant was represented by more than a half-dozen different appointed and privately-retained attorneys. At the time of trial, however, Appellant appeared without counsel and acted *pro se*, as the court concluded that Appellant forfeited the

right to counsel.[1]  Upon the trial's conclusion, the court found Appellant guilty of the crimes indicated above.

Appellant was sentenced on August 16, 2023, wherein he continued to represent himself.  He did not request counsel at the hearing, though he did express to the court his desire to appeal.  The court later appointed counsel approximately four days before expiration of the deadline in which to file an appeal, and Appellant's attorney filed a motion for reconsideration of sentence *nunc pro tunc*.  The motion asserted, among other things, that Appellant "did not request to proceed *pro se*, expressed his intent to be represented by counsel, did not receive standby counsel and did not knowingly, voluntarily[,] and intelligently waive his right to counsel."  Motion to Reconsider and Modify Sentence *Nunc Pro Tunc*, 9/14/23, at 20.  Before the motion was decided, Appellant, through his attorney, filed a timely notice of appeal and court-ordered statement of errors pursuant to Pa.R.A.P. 1925(b).  The court authored a responsive Rule 1925(a) opinion.

Appellant presents two issues on appeal:

1.      Was it error for the trial court to allow the non-jury trial to go forward without counsel representing [Appellant] and an inadequate waiver of [Appellant]'s constitutional rights being placed on the record, thereby establishing a determination counsel was forfeited?

---

[1] Although the court attempted to conduct a waiver of counsel colloquy at the onset of trial, the court expressly indicated that its decision to proceed was based on forfeiture, not waiver.  **See** Trial Court Opinion, 1/11/24, at 16.  This was presumably because during the colloquy, Appellant indicated that he did not understand the nature of the charges against him or that he would still be bound by the rules of criminal procedure.  **See** N.T. Trial, 5/18/23, at 55.

2.    Even if this Honorable Court would conclude that [Appellant] waived or forfeited his right to counsel, did the trial court abuse its discretion when it failed to appoint standby counsel for trial and sentencing?

Appellant's brief at 3.

In his first claim, Appellant contends that the trial court erred in determining that he forfeited his right to counsel. "The alleged denial of a constitutional right is a question of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. McLendon**, 293 A.3d 658, 666 (Pa.Super. 2023) (citation omitted).

Our High Court has elucidated as follows:

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense. Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel. However, the constitutional right to counsel of one's own choice is not absolute. Rather, the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.

**Commonwealth v. Lucarelli**, 971 A.2d 1173, 1178-79 (Pa. 2009) (cleaned up).

Despite these protections, a "defendant may waive the right to counsel." Pa.R.Crim.P. 121(a)(1). To satisfy itself that any waiver is knowing and

voluntary, a trial court is required to elicit certain information from the defendant, generally done through a colloquy. *See* Pa.R.Crim.P. 121(b).

Pennsylvania courts have also recognized that there are times when a defendant may forfeit the right to counsel through his actions, rather than knowingly waive it. "Forfeiture of counsel does not require the intentional relinquishment of a right, as in the case of waiver. Forfeiture is the result of a defendant's extremely serious misconduct or extremely dilatory conduct." *McLendon*, 293 A.3d at 665-66. "Where a defendant forfeits his right to counsel, [Rule] 121 and its waiver colloquy requirements do not apply." *Id.* at 666.

With these legal precepts in mind, we turn to the trial court's rationale for finding that Appellant forfeited his right to counsel at the time of trial. The court proffered the following extensive summary of the procedural history of this case:

> [Appellant] was represented by seven attorneys in this matter. . . . At his preliminary hearing, [Appellant] secured private representation by Milton Raiford, Esquire. The reason [Attorney] Raiford did not continue to represent [Appellant] in the court of common pleas is unknown . . . . On December 18, 2019, [Appellant] appeared before the [court] on his scheduled trial date and requested a postponement of the proceedings to obtain counsel. On that date, [Appellant] asserted that he desired to obtain private counsel and that [he] intended to hire Patrick Thomassey, Esquire as his attorney. [Appellant] was advised by th[e] court to come back on his next trial date of March 19, 2020 and to be prepared to proceed.
>
> However, on February 7, 2020, Stacey Steiner, Esquire, an attorney with the Allegheny County Office of the Public Defender[,] filed a motion for appointment of counsel wherein she

- 4 -

averred that her office had a conflict of interest that necessitated appointment of alternate counsel. Th[e] court presumed that [Appellant] had changed his mind regarding obtaining private counsel and that he had made application to the Office of the Public Defender for representation. After review of the motion . . ., [it] was granted without a hearing on February 20, 2020, and Robert Perkins, Esquire was appointed to represent [Appellant]. [Attorney] Perkins entered his appearance on that same date.

Despite being provided court-appointed counsel, on March 16, 2020, [Attorney Thomassey] entered his appearance as private counsel. On November 4, 2020, Attorney Thomassey filed a motion to withdraw as counsel. A hearing was held on this motion . . . . At the hearing, it was clear to the [court] that a significant breakdown in the attorney-client relationship existed that necessitated [Attorney] Thomassey's withdrawal. [More specifically, Attorney Thomassey testified that during a phone call, Appellant called him and his mother derogatory terms and threatened his safety.] At the conclusion of the hearing, [Appellant] advised the court that he planned to obtain another private counsel and [Attorney] Thomassey's motion to withdraw was granted.

On January 15, 2021, five days prior to his January 20, 2021 trial date, Joseph Hudak, Esquire, entered his appearance as private counsel in this matter. On January 20, 2021, Attorney Hudak stated that although he was prepared to proceed to a non-jury trial, he requested a postponement of the trial date on the basis that he did not believe [that Appellant] understood the seriousness of the charges against him. He requested additional time to meet with [Appellant] and explain the potential consequences if he proceeds to trial and is convicted. As the Commonwealth consented to the postponement request, th[e] court granted it, and the following exchange occurred:

> THE COURT: Do you understand that you're being charged—you probably have reviewed the case; there's eight counts. So, let's be prepared to do something one way or the other, other than a continuance on March 29th.
>
> [Appellant]: Yes, sir.

- 5 -

THE COURT: Okay. March 29th we're going to move this case. There isn't going to be any more continuances.

[Appellant]: Yes, sir.

THE COURT: And you're on the case[,] Mr. Hudak. So, I expect to see you here on the 29th.

MR. HUDAK: Yes, Your Honor.

On March 29, 2021, the Commonwealth was not prepared to proceed, as the newly assigned assistant district attorney was not apprised that the plea offer was rejected and the matter was proceeding to trial. As such, a new trial date of June 4, 2021 was selected.

On May 3, 2021, Attorney Hudak filed a motion to withdraw as counsel. A hearing on the motion to withdraw was heard on June 4, 2021. At that hearing, [Attorney] Hudak testified as follows:

First, I am his fifth lawyer, and [Appellant] has a different way of understanding the way these procedures work. I'll give you a couple of examples.

Yesterday, he—I texted [Appellant] yesterday to tell him that we had this hearing, and he then called me and was very upset and felt that I had insulted him by sending him that text to remind him of this hearing.

I'm not even understanding the reasons why. I have had dozens of meetings, texts, phone calls with him. I visited his apartment four times. I've given him all of the discovery. I gave him the plea bargain for the case, and he does not like anything that I am doing. He feels that I have failed him on prior court appearances before Your Honor which those court hearings were status conferences.

[Appellant] believes [that in] those status conferences I should have requested the dismissal of this case because the victim was not present. He told me yesterday that if the victim was not present today to

request dismissal of this case. I explained to him that this is a status conference today. I explained to him if the case was scheduled for trial today just because the victim wasn't there that would not automatically dismiss the case.

It is a very serious attempted rape[2], aggravated assault, and he has a much different perspective on this.

Th[e] court asked [Attorney] Hudak if he was withdrawing because he wished to withdraw, [and he] stated that [Appellant] "demanded that I withdraw." [Appellant] stated that on the previous occasion this matter was before th[e] court, [Attorney]. Hudak made him appear to be incompetent. Further, [Appellant] stated:

The truth of the matter was him and I discussed it, the arrangement that I wanted on that particular date. He didn't follow through with that arrangement. So, therefore, I had to terminate him because he—he seems to be thinking I'm incompetent.

I was aware of the court date. I showed up. He didn't show up. He came up on the screen like today. He told me he would be here in person. He's on the screen. Now COVID or no COVID, he represents me.

I said to him, why don't you—since the cop wasn't here and the woman wasn't here, why don't you just recommend a dismissal? I already told him I wanted to fight the case. I don't know the arrangement he made, and I wasn't in agreement with his arrangements. He never comes to see me like he's supposed to.

It's always like I'm not his client. We have a collision with his ethical part of being an attorney. He's not genuine.

_____

[2] This statement appears to be in error, as Appellant was never charged with attempted rape.

- 7 -

Thereafter, th[e] court advised [Appellant] as follows: "This case was filed almost three years ago. This case is going to move. You work with Mr. Hudak. I'm not granting that withdrawal, and we're going to get a court date. And you show up and your lawyer shows up, but we're going to proceed on this case. This is your fifth lawyer." Thereafter, [Appellant] was advised that there would be no further continuances of this matter.

On August 6, 2021, [Appellant] filed a motion to remove [Attorney] Hudak from [the] case and attached to it a copy of the correspondence he received from the Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania confirming that he had filed a complaint against Attorney Hudak. Via order of court dated August 16, 2021, a hearing was scheduled for September 1, 2021 to address [Appellant]'s motion. As an attorney cannot represent a defendant where their representation is the subject of a disciplinary complaint, th[e] court granted [Attorney] Hudak's withdrawal.

On that date, [Appellant] advised that he had private counsel prepared to represent him, however, after inquiry by th[e] court, it was determined that the attorney he had anticipated to be his attorney was employed by the Office of the Public Defender who had previously withdrawn. As such, at that point, th[e] court stated, "what I'm going to do is I'm going to send this over to conflict counsel and they are going to provide an attorney for you and that is going to be it." [Appellant] acknowledged that he understood. Further, th[e] court stated, "[t]his case has been going on. As I said, you had six lawyers, competent lawyers, lawyers that have traditionally practiced in this courtroom. For whatever reason things haven't worked out. But the next lawyer, you are either going to work with or be prepared to represent yourself."

On September 2, 2021, Attorney Brandon Herring of the Office of Conflict Counsel entered his appearance on behalf of [Appellant]. In November 2021, [Attorney] Herring requested a continuance, as he had begun to experience symptoms of COVID and remained at home, in quarantine, pending receipt of his lab results. This request was granted. A new trial date of January 21, 2022 was set. Unfortunately, [Attorney] Herring again was suffering from flu-like symptoms . . . and requested another postponement. This request was granted and another trial date

was scheduled for March 28, 2022. On [that date], [Appellant] indicated that he would like to select a jury for this matter. As the matter was listed as a non-jury trial, a new trial date had to be selected to accommodate [Appellant]'s request for a jury trial.

On July 15, 2022, Attorney Herring filed a motion to withdraw as counsel. In his motion, Attorney Herring stated, among other things, "further, on an occasion when [Appellant] was admitted to the office despite not having scheduled an appointment, he engaged in behavior that made several members of counsel's staff feel unsafe." This court scheduled a hearing on this motion for August 17, 2022. On that date, [Appellant] contested [Attorney] Herring's assertion that he created an unsafe working environment for the staff at the Office of Conflict Counsel. Given that [Attorney] Herring [was] unable to be a witness in this matter against his client, and [Attorney] Herring stated that "as [Appellant]'s present attorney, I believe, that developing these issues for the record would not be in his best interest," th[e] court found that a breakdown of the attorney-client relationship existed and granted his motion to withdraw. However, th[e] court advised [Appellant] as follows:

> [N]ow, just for the record, this case is over [three] and [one-half] years old. [Appellant], you've had six lawyers. You've had Attorney Milton Raiford, Attorney Stacey Steiner, Attorney Robert Perkins, Patrick Thomassey, and Attorney Joe Hudak and now we have Attorney Brandon Herring.
>
> So, I take it you're going to represent yourself. Apparently, there's been—I can't recall a defendant that has gone through six lawyers since I've been on the bench, and I'm now in my 17th year. So[,] the only recourse is you representing yourself. And we'll give you time to prepare you[r] case; okay? You will be a *pro se* defendant.

[Appellant] was advised that he had the ability to obtain private counsel, but any counsel he chose would be required to proceed to trial on the next scheduled date.

On September 21, 2022, Carl Marcus, Esquire entered his appearance on behalf of [Appellant] in this matter. On September 21, 2022, Assistant District Attorney Bridget Synan requested a

continuance of the matter due to the victim not being notified of the hearing date. Attorney Marcus objected to the postponement request on behalf of [Appellant]. Despite [Appellant]'s objections, th[e] court granted the request.

On November 28, 2022, Attorney Eric Jobe appeared on behalf of Attorney Marcus and requested a continuance due to [Attorney] Marcus'[s] hospitalization. This request was granted. Unfortunately, [Attorney] Marcus passed away on January 30, 2023. His active cases were transferred to Attorney Hudak. Due to the prior history of the case, [Attorney] Hudak filed a motion to withdraw as counsel on February 27, 2023 on behalf of Carl Marcus'[s] estate. On March 21, 2023, Attorney Hudak, [Appellant], and the Commonwealth appeared. [Appellant] requested court-appointed counsel. Th[e] court stated as follows:

> I can't appoint anymore. You have had conflict counsel. You have had [a public defender]. I counted, I think eight lawyers, so—so I'm going to set a trial date and you have the option [Appellant], of representing yourself or having private counsel. I can't—I cannot assign another public defender or conflict counsel to you. You have gone through that, well, I mean something's wrong with this case. As [Assistant District Attorney] Buzza said—has been [eighteen] continuances. That has to be a record.
>
> So[,] I will give you a date. Be prepared. Represent yourself or have private counsel. That's where we're at. I mean, you've gone through public counsel, I believe four of them, for whatever reasons. You weren't able to work with them, or they weren't able to work with you, and you hit the record for this courtroom. In my [eighteen] years, you got the record. And so, I mean, you can rest with the record. We can't increase it anymore, you know?

On May 18, 2023, [Appellant] appeared without an attorney. [He] waived his right to a jury and elected to proceed to a bench trial. While th[e] court [attempted to conduct] a colloquy of [Appellant] with respect to his right to counsel, due to this court's previous findings, [Appellant] had forfeited his right to counsel and the colloquy was unnecessary.

- 10 -

Trial Court Opinion, 1/11/24, at 7-15 (cleaned up, footnotes omitted).

In its Rule 1925(a) opinion, after recounting the above history of the case, the court further articulated its reasoning for finding that Appellant forfeited the right to counsel as of the time of trial. It compared this matter to the facts in *Commonwealth v. Kelly*, 5 A.3d 370 (Pa.Super. 2010), wherein this Court affirmed a trial court's finding of forfeiture. In our *Kelly* holding, we stated:

> Kelly was a criminal defendant who had been unwilling to cooperate with all three counsel assigned to him; who argued all counsel were incompetent because they refused to argue what he believed was the law; who, the day after his *pro se* motion to withdraw his first guilty plea was granted, filed *pro se* an omnibus pre-trial motion seeking suppression of evidence on a ground the trial court had already addressed (validity of search warrant); who wanted a counsel, but only one who would please him; who treated appointed counsel with disdain; whose trial had been already postponed because he could not agree with assigned counsel (counsel 2); who had been warned by the trial court that failure to cooperate with assigned counsel (counsel 3) would result in him representing himself *pro se* at trial; who sought to have other counsel appointed to him (who would have been counsel 4) and postpone the trial instead of trying to cooperate with counsel 3; and who clearly was not interested in listening closely [to] what [the court] was telling him, consumed as he was in making his point counsel were ineffective and he knew the law better than assigned counsel.

*Id*. at 381-82.

After opining that the facts in *Kelly* and the instant case were sufficiently similar, the trial court concluded that, while two of Appellant's attorneys were unable to represent him for reasons other than Appellant's conduct, the withdrawals of at least Attorneys Thomassey, Hudak, and Herring

- 11 -

"were the result of [Appellant]'s conduct and his inability to cooperate with counsel." Trial Court Opinion, 1/11/24, at 15-16. The court therefore determined that Appellant had forfeited his right to counsel.

In contrast, Appellant argues that "there is no evidence that his behavior [was] intended to do anything other than convince the trial court of his innocence. He never committed any extreme acts that courts have found to support forfeiture." Appellant's brief at 18-19. Appellant criticizes the trial court for failing to order any mental health assessment to ascertain the root of Appellant's self-destructive behavior. *Id*. at 19. He states that "[n]o defendant should face incarceration without the court being assured that he or she got there by poor judgment or even stupidity[,] not by any type of mental deficiency or the failure to comprehend what rights he is giving up." *Id*. at 20. Appellant compares this case to situations wherein a defendant cannot speak English, and thus must be given a translator in order to protect important legal rights. *Id*.

Appellant further argues that neither the court nor prior counsel took any steps to ascertain whether Appellant was of sound mind and competent. *Id*. at 21. This was so despite comments from counsel, namely Attorney Hudak, suggesting that Appellant may not have understood the charges. *Id*. He contends that his "action's [*sic*] though frustrating to the trial court and even the attorneys, are not knowing and understanding so may not deprive him of this important constitutional right." *Id*. at 23. Appellant then recounts at length his review of the procedural history and numerous continuances in

- 12 -

this matter, highlighting in particular periods of time that Appellant was not engaging in disruptive behavior or otherwise causing delay. *Id*. at 23-29. He additionally disputes the total number of attorneys the trial court reportedly claimed he had at various points on the record. Appellant concludes that "[w]hen attorney Marcus's passing was made known to the court it should have appointed counsel who could assure the trial court, he or she would be ready on the next trial date." *Id*. at 30.

Upon review, we conclude that the trial court did not improperly infringe on Appellant's constitutional right to counsel at trial. As noted, the relevant inquiry with regard to forfeiture is whether Appellant engaged in "extremely serious misconduct or extremely dilatory conduct." *McLendon*, 293 A.3d at 665-66. We find that like the defendant in *Kelly*, Appellant's conduct rose to this level.

Three separate attorneys moved to withdraw their representation based upon allegations relating to Appellant's actions. Attorney Thomassey reported that Appellant threatened him and called him derogatory names. Attorney Hudak indicated that Appellant was hostile in his communications, expected the filing of baseless motions, and filed a complaint against him with the Office of Disciplinary Counsel to have him removed after the court commanded Appellant to work with counsel. Finally, Attorney Herring recounted that Appellant engaged in a situation wherein he made the employees at the Office of Conflict Counsel feel unsafe and that further testimony as to the conduct would not have been in Appellant's interest. These events demonstrated that

Appellant lacked the ability to engage with either counsel of his choosing or those appointed to him by the court.

Like the defendant in **Kelly**, Appellant was warned by the trial court on numerous occasions that he would not receive further continuances of trial, regardless of his issues with counsel. Notwithstanding this, and despite his actions toward counsel causing them to withdraw, Appellant appeared for trial at least two times without an attorney. Furthermore, akin to **Kelly**, Appellant's issue with his attorneys concerned in part their refusal to make frivolous motions, such as seeking to dismiss the case at status conferences. Finally, although the record makes clear that the Commonwealth was responsible for some of the delays in this matter, Appellant was not blameless, even excluding the withdrawal of his attorneys. For instance, while represented by Attorney Herring, Appellant requested a jury trial at the eleventh hour, nearly three years after the charges were initially filed and more than two years from the first scheduled court date, just to later proceed to a bench trial.

We have no trouble concluding that Appellant engaged in "extremely serious misconduct or extremely dilatory conduct" that warranted forfeiture of his right to appointed counsel, where he either requested continuances or caused need of them through his actions at least five times. **See McLendon**, 293 A.3d at 665-66. While Appellant was not responsible for any delay resulting from the death of Attorney Marcus, he was nonetheless unambiguously instructed by the court that he would need to come to trial

- 14 -

two months later with private counsel or be prepared to defend himself. Appellant chose to appear for trial without representation. The court was not required under these circumstances to appoint counsel yet again. Although Appellant expends significant energy in his brief disputing particular findings of the court, such as instances wherein it miscalculated the exact number of attorneys Appellant had, these assertions do not dispute the overall history of the case.

As an additional matter, we decline Appellant's invitation to impose new requirements on the trial courts of this Commonwealth to order tests for competency prior to finding forfeiture of counsel. Appellant directs us to no rule, statute, or constitutional provision that requires anything of that sort, and we note that such policy considerations like those are best left to the legislature. To the extent Appellant's arguments suggest that forfeiture requires that a defendant knowingly understand the right he is forfeiting, that obliterates the distinction between forfeiture, which occurs based on conduct alone, and waiver of counsel, which requires a voluntary decision after a full and proper Rule 121 colloquy. In any event, Appellant has not convinced us that his conduct in threatening his attorneys or their staff and appearing at trial without counsel were done involuntarily, or that his actions were the result of some lack of competence. No relief is due.

In his next claim, Appellant asserts that even if the trial court properly concluded that he forfeited his right to counsel, it nonetheless erred by failing to appoint standby counsel either at trial or sentencing. For the reasons

discussed below, we conclude that while the court did not err in refusing to appoint standby counsel for trial, the court should have either conducted a waiver of counsel colloquy at sentencing or determined if Appellant had engaged in conduct arising to the level of forfeiture of counsel between trial and the time of sentencing.

Standby counsel is governed by Pa.R.Crim.P. 121, and states as follows in relevant part: "When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice." Pa.R.Crim.P. 121(D). The comment to the rule provides that "[w]ith respect to trials in court cases, when the defendant waives the right to counsel and elects to proceed *pro se*, it is generally advisable that standby counsel be appointed to attend the proceedings and be available to the defendant for consultation and advice." Pa.R.Crim.P. 121, cmt. Although Rule 121 applies to situations wherein a defendant has **waived** the right to counsel, the precept of appointing standby counsel has applied in circumstances involving forfeiture. *See*, *e.g.*, *Lucarelli*, 971 A.2d at 1177 (recounting that although Lucarelli forfeited the right to counsel for purposes of trial, he "proceeded *pro se* with the assistance of standby counsel").

Appellant first argues that the court should have appointed standby counsel at trial in order to safeguard his rights. *See* Appellant's brief at 32. He contrasts this matter to the *Lucarelli* case, wherein the trial court found that the defendant forfeited the right to counsel, but nonetheless provided

- 16 -

standby counsel for both trial and sentencing. *Id*. at 31-32. Appellant believes the same should have been done here, especially in light of Attorney Hudak's comments to the court about Appellant not understanding the charges against him. On the other hand, both the trial court and the Commonwealth highlight the discretionary language of Rule 121, opining that the court did not abuse its discretion in failing to provide standby counsel under these circumstances.

We agree with the court and the Commonwealth. Since we have already concluded that Appellant forfeited his right to counsel for purposes of trial, it was within the discretion of the court to appoint standby counsel for that proceeding. Although in *Lucarelli* the trial court used its discretion to appoint standby counsel after finding that the defendant forfeited that right, the Supreme Court did not hold in that case that it **was required** to do so. Therefore, we discern no error.

Appellant's second argument under this claim is that even if the court properly found that Appellant forfeited his right to counsel, he should have been appointed counsel for sentencing. *See* Appellant's brief at 12, 31-35. We are constrained to agree that the court erred in how it conducted sentencing in this case. Initially, we note that while Appellant uses the term "standby counsel" on more than one occasion in his brief, his contention goes more broadly to, and is fairly suggestive of, the right to representation and the duty of the courts to protect that right. *Id*. at 34 (arguing that the trial court neglected to conduct a Rule 121 waiver colloquy during sentencing); *id*.

at 35 (contending that "[c]ounsel should have been appointed for [Appellant] at sentencing" rather than limiting the claim to standby counsel). *See also* Pa.R.A.P. 2116(a) (requiring that in appellate briefs, the statement of questions involved "will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Appellant highlights that even if he engaged in conduct that constituted forfeiture as to trial, he did no such thing with respect to sentencing. *Id*. at 32-33.

This Court has held that "[a] judge's thorough inquiry into the accused's appreciation of both the right to counsel and the right to represent oneself must be used in certain summary proceedings, at trial, guilty plea hearings, **sentencing**, and every 'critical stage' of a criminal proceeding." *Commonwealth v. Phillips*, 93 A.3d 847, 854 (Pa.Super. 2014) (emphasis added, citation omitted). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Commonwealth v. Johnson*, 828 A.2d 1009, 1014 (Pa.Super. 2003) (citations omitted). Further, "[t]his right of counsel's presence is required at every stage of a criminal proceeding where substantive rights of the accused may be affected." *Id*. (citations omitted). "A court's failure to conduct a valid colloquy before allowing a defendant to proceed *pro se* constitutes reversible error." *Commonwealth v. Floyd*, 257 A.3d 13, 18 (Pa.Super. 2020) (citation omitted).

- 18 -

In its Rule 1925(a) opinion, the trial court did not address the necessity of conducting a new colloquy regarding the right to counsel after a finding of forfeiture. It similarly did not make any determination that Appellant took actions between the time of trial and sentencing that would warrant forfeiture of his right to appointed counsel. For its part, the Commonwealth rejects as inapposite the cases relied upon by Appellant and contends that the court was not required to perform any colloquy at sentencing due to Appellant's prior forfeiture. *See* Commonwealth's brief at 13-15.

We agree with Appellant that the court erred in failing to either explain why his forfeiture applied to the sentencing hearing or ascertain whether he wished to waive counsel. Although not binding, we find this Court's holding in ***Commonwealth v. Fountain***, 311 A.3d 583, 2023 WL 8643776 (Pa.Super. 2023) (non-precedential decision), to be persuasive and on point. There, the trial court determined that Fountain had forfeited his right to representation immediately prior to a jury trial when he appeared without an attorney, despite being given multiple continuances in order to do so. Fountain represented himself, with the assistance of standby counsel who performed limited cross examination as to one witness, and the result was a mistrial due to a hung jury. Fountain was re-tried approximately ten months later, during which he represented himself again. Notably, Fountain did not request counsel for the subsequent trial and even indicated to the court that his intention was to represent himself. The trial court accordingly did not conduct a waiver of counsel colloquy pursuant to Rule 121, and Fountain never

objected. Fountain was convicted following trial and appealed to this Court, alleging that his constitutional right to counsel had been violated.

This Court agreed, and we therefore vacated the judgment of sentence and remanded for a new trial. In so doing, we noted that the subsequent trial was a "critical stage" in the proceedings. *Id*. at *9-10. We held that the trial court thus erred in not performing a colloquy to ascertain whether Fountain was knowingly and voluntarily waiving his right to counsel as to the re-trial. Further, this Court observed that there had been no actions by Fountain following the initial trial rising to the level of forfeiture. Although we acknowledged the "ongoing waiver" doctrine, which allows a valid waiver of counsel to remain in effect unless there is a substantial change in circumstances, this Court did not determine that the doctrine applied to forfeiture situations.[3]

Here Appellant, like Fountain, forfeited his right to counsel at trial. Also as in **Fountain**, Appellant then proceeded unrepresented at another critical stage of the proceedings months later, sentencing. **See Phillips**, 93 A.3d at 854; **see also Floyd**, 257 A.3d at 18 (noting that the court committed

_____

[3] In a concurring memorandum, this author encouraged the Pennsylvania Supreme Court to consider expanding the doctrine of "ongoing waiver" to apply to situations wherein a defendant forfeits the right to counsel. The Supreme Court has granted allowance of appeal in that case as to the following issue: "Did the Superior Court err by failing to treat forfeiture of counsel as a test involving a continuing pattern of behavior akin to the "ongoing waiver" rule where there was no substantial change in circumstance and where Defendant repeatedly exhibited dilatory conduct." Order, 8/27/24, 149 MAL 2024. However, until that issue is decided, there is no authority permitting this Court to apply the "ongoing waiver" doctrine to the circumstances herein.

reversible error multiple times by failing to perform a waiver of counsel colloquy at each of several subsequent critical stages, including suppression, a guilty plea, and sentencing).  At sentencing, the trial court was required to conduct a colloquy pursuant to Rule 121 to see if Appellant desired to proceed without the benefit of counsel.  Alternatively, the court could have determined that Appellant had engaged in conduct since trial that arose to the level of forfeiting the right to counsel for purposes of sentencing.  The court did neither, and instead simply presumed that Appellant's prior forfeiture of counsel sustained through a subsequent critical stage of the proceedings.  However, since the "ongoing waiver" doctrine does not apply to forfeiture matters, the court erred by failing to take adequate steps to safeguard Appellant's right to representation.

Additionally, even though Appellant never objected to this procedure at sentencing, he is still entitled to relief.  *See Fountain*, 2023 WL 8643776 at *9 (non-precedential decision) (discussing that Fountain's decision to inform the court and jury that he was representing himself did not relieve the court of the duty to perform a colloquy); *Floyd*, 257 A.3d 13 (providing relief to the appellant when the court's waiver of counsel colloquy was deficient with no indication that appellant lodged a contemporaneous objection to the procedure).  The *Floyd* Court specifically noted that "[a] court's failure to conduct a valid colloquy before allowing a defendant to proceed *pro se* constitutes reversible error." *Id*. at 18.  Further, "deprivation of the right to counsel, or the right to waive counsel, can never be harmless." *Id*. (citing

*Commonwealth v. Payson*, 723 A.2d 695, 699-700 (Pa.Super. 1999)). Appellant also presented the argument regarding the ineffectiveness of his purported waiver in the trial court through his motion for reconsideration of sentence *nunc pro tunc*, thus rendering this a reviewable issue. *Cf.* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). We are therefore constrained to vacate the judgment of sentence and remand for resentencing.

In sum, the trial court did not err in concluding that Appellant forfeited his right to counsel for trial and it likewise was not required to appoint standby counsel for that proceeding. However, the court failed to protect Appellant's constitutional right to counsel at sentencing. On remand, to the extent Appellant is unrepresented, the court shall either (1) conduct a colloquy pursuant to Rule 121 to determine if Appellant knowingly and voluntarily waives his right to counsel, or (2) otherwise expressly determine whether Appellant has forfeited the right to counsel for purposes of sentencing. In the event that there is no valid waiver or finding or forfeiture, the court must appoint counsel.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/6/2025